# 𝕸𝖞𝖙𝖍𝖊𝖛𝖎𝖑𝖑𝖊.

## PENICK'S EXECUTOR V. WALKER AND OTHERS.

### June 12, 1919.

### Absent Sims, J.

1. WILLS—*Construction—Rules Not Very Helpful.*—In the majority of cases of the construction of wills, rules of construction and judicial precedents are not very helpful. After all but little aid can be derived in the construction of wills from adjudged cases, as each case must be governed by its own particular facts and circumstances. It may be doubted if any other source of enlightenment in the construction of a will is of much assistance than the application of natural reason to the language of the instrument under the light which may be thrown upon the intent of the testator by the extrinsic circumstances surrounding its execution, and connecting the parties and the property devised with the testator and with the instrument itself.

2. WILLS—*Construction—Primary Rule—Situation of the Testator.*—The primary consideration and rule of construction is to determine the intention of the testator from the language which he has used. If the meaning of his language is plain, the will must be given effect accordingly. This rule is familiar and elementary, and to it all others are subordinate and subservient. If there be doubt as to the meaning, then the auxiliary or subordinate rule to be first applied, and the one of most usefulness and importance, is for the court to place itself as nearly as possible in the situation of the testator at the time of the execution of the will.

3. WILLS—*Construction—Gift Under Belief that Estate is Larger than it is.*—A testator ordered that the sum of $10,000 be set aside for his daughter, the interest thereof to be used for the support of herself and children, and when her youngest child becomes twenty-one years old, the sum to be equally divided between the mother and her child or children. "This sum can be made up of money from my insurance policies." It was apparent that testator had overlooked the fact that his daughter was the beneficiary under his insurance policies and as such

was entitled to the entire fund derived from them as a mat-
ter of contract, and that therefore he had no control of the
proceeds by testamentary provision.   The testator thought he
was dealing with an estate worth about $30,000 instead of
about $20,000 (the latter figure representing about the value
of the estate less the insurance), and of that estate he intended
to give to his daughter (already well provided for) about one-
third in the form of a trust fund.

*Held:* That although the reference to the insurance fund was
merely directory, testator did not intend his daughter to have
both the insurance money and an additional $10,000 trust fund
to come out of the residue of the estate, and therefore there
was a failure of the entire gift, and the interest of the children
failed with it.

Appeal from a decree of the Circuit Court of Halifax
county.   Decree for complainant.   Defendant appeals.

*Reversed.*

The opinion states the case.

*Samuel L. Adams, James E. Cannon, S. A. Anderson,
Clifton Penick* and *John Martin,* for the appellant.

*H. C. Riely* and *Easley & Bouldin,* for the appellees.

KELLY, J., delivered the opinion of the court.

This suit involves the construction of Bishop Charles C.
Penick's will.

Bishop Penick died in a hospital in Baltimore in April,
1914.   He was a widower, his wife having died in October,
1912, and he had for some time been residing in Halifax
county, making his home with his brother, R. A. Penick.
He had an only daughter, Mary Clifton Walker, who, with
her husband, resided in the city of Frankfort, Ky.   At the
time of Bishop Penick's death, Mrs. Walker had one child,
Mary Hoge Walker, who was about four years old.   Another
child was subsequently born, but has since died.   Mrs.

Walker was comfortably well-off, having acquired, through her mother, an estate worth apparently considerably more than the estate disposed of in her father's will.

At the date of the will, and at the date of Bishop Penick's death, he had two life insurance policies, one thereof for the face amount of $10,000 (subject to a premium note) payable to Mrs. Walker, but by the terms of which he had the right to change the beneficiary at will; and the other for the sum of $2,500.00, in which the beneficiary was his wife, and as to which he did not have the right to make such change. After his death, Mrs. Walker, who, as the beneficiary as to the former policy and as the only child of her deceased mother as to the latter policy, was entitled to all of the insurance money, realized therefrom the total sum of $9,840.37.

The above-mentioned policies represented the only insurance which the testator had at the date of the will or at the date of his death, and, so far as the record shows, the only insurance which he had ever taken out upon his life.

The controverted question in this case arises out of the following language in the third clause in the will of Bishop Penick, which is as follows: "I order that the sum of ten thousand dollars be set apart for my daughter, Mary Clifton Walker, safely invested and the interest thereof be used towards the support of herself and children, if any—especially to help in their education—and when her youngest child becomes twenty-one years old, the sum may be equally divided between the mother and her child or children, the mother to have one-half and the children the other. This sum can be made up of money from my insurance policies." The remainder of the third clause purported to confer on Mrs. Walker certain interests in her mother's real estate which belonged to her independent of the will.

By the fourth clause, the testator provided for an annuity of $50.00 to his cousin Isabella Breedlove; by the fifth, he

gave a legacy of $500.00 to his brother, Robert A. Penick, and a legacy of like amount to the wife of his brother, Edwin A. Penick; and by the sixth, he gave $250.00 each to five nieces and nephews, and then directed that the residue of his estate be converted into money and divided equally between and among four institutions under the control of the Protestant Episcopal church.

After the death of Bishop Penick and the qualification of the executor, Mrs. Walker called upon the latter to create and set apart out of the estate a trust fund of $10,000 for herself and children, claiming that she was entitled to the benefit of the provisions of the third clause of the will in addition to the insurance money which she had already received, and which the testator had evidently supposed would fall into and become a part of his estate. The executor refused to comply with this demand on the part of Mrs. Walker, and thereupon she brought this suit to settle the question.

The cause was heard upon the bill and answer of the executor and certain other defendants, and upon the depositions of witnesses, and the circuit court being of opinion that the mention of the insurance money "was intended by the testator to be nothing more than a suggestion to his executor, and that it was not mandatory and restrictive so as to nullify the creation of the trust fund provided for in the said third clause of the will, in the event that there is not sufficient insurance money belonging to the estate from which said fund could be satisfied," decreed the creation of the trust in accordance with the prayer of the bill. From that decree this appeal was allowed.

[1] We have been referred to a number of rules for the construction of wills, and in support thereof many authorities have been cited. As in the majority of such cases, however, rules of construction and judicial precedents are not very helpful. "After all, but little aid can be derived in the construction of wills from adjudged cases, as each case

must be governed by its own particular facts and circumstances. It has, therefore, been well said: that it 'may be doubted if any other source of enlightenment in the construction of a will is of much assistance than the application of natural reason to the language of the instrument under the light which may be thrown upon the intent of the testator by the extrinsic circumstances surrounding its execution, and connecting the parties and the property devised with the testator and with the instrument itself.' " *Cole* v. *Cole,* 79 Va. 251, 255.

[2] The primary consideration and rule of construction is to determine the intention of the testator from the language which he has used. If the meaning of his language is plain, the will must be given effect accordingly. This rule is familiar and elementary, and to it all others are subordinate and subservient. If there be doubt as to the meaning, then the auxiliary or subordinate rule to be first applied, and the one of most usefulness and importance, is for the court to place itself as nearly as possible in the situation of the testator at the time of the execution of the will. In this case, the language of the testator is not plain. He does not make it clear whether the words, "this sum can be made up of money from my insurance policy" were restrictive or merely directory. We cannot say certainly from a mere reading of the will whether he meant to say that the trust fund was to be created only in case the insurance money was sufficient for the purpose, or merely meant to suggest that this would be a convenient source from which to get it. In view of this doubt, we must look to the situation and place ourselves as nearly as we can in his position at the time he wrote the will. In doing this, we find that he had two insurance policies, and only two. They would not belong to his estate, but manifestly he thought he had the power to control the proceeds thereof by testamentary provision. There is no escape from this latter conclusion. It is not

reasonable to suppose that he thought his daughter might or would release ten thousand dollars of insurance money belonging absolutely to her in exchange for a trust fund upon which she was to have for a probably long and certainly indefinite period only the income, and at the end of that period, receive only one-half of the principal as her own; nor is it reasonable to suppose that the testator imagined that the executor would or could use his daughter's money in the creation of the trust fund. He simply either overlooked the provisions of the policies as to the beneficiary or misapprehended the legal effect of such provisions. This is not only a perfectly plain conclusion, but it is not controverted. It was expressly conceded, and indeed contended, by appellee's counsel during the oral argument before us that Bishop Penick thought he could dispose of the insurance by will, that this is the reason for his reference thereto, and that he overlooked the fact that the entire fund would go to his daughter as a matter of contract under the terms of the policy. And in their brief they say: "Evidently Bishop Penick had the insurance policies in mind as a means of payment of this bequest and without knowledge of his lack of power over them so suggested; he did not by his words, however, as pointed out before, make the bequest apply exclusively from that source."

[3] This, we think is the end of the case. It simply means that the testator thought he was dealing with an estate worth about $30,000.00 instead of about $20,000.00 (the latter figure representing about the value of the estate, less the insurance), and of that estate he intended to give to his daughter (already well provided for) about one-third, in the form of a trust fund, as provided for in clause 3. Assuming, as he did, that the insurance money would fall into the estate, of course he very naturally did not care particularly about the source from which the trust fund should be taken, and he merely meant to say that it could come from

the insurance as a quick and ready source. We do not doubt, therefore, that, as argued and as stated in the decree of the lower court, the reference to the insurance was merely intended as a suggestion to his executor, and was not, in that sense, intended to be mandatory or restrictive. But it does not at all follow from this directory reference to the insurance that he intended the $10,000 to be set aside regardless of such insurance. Upon the contrary, when once it is granted, as it is and must be, that his mention of the insurance indicated that he thought he could dispose of it, the inevitable conclusion is that he did not intend his daughter to have both the insurance money and an additional $10,000 trust fund to come out of the residue of the estate. In other words, the view that he thought he was dealing with ten thousand dollars more than he actually had, necessarily results in a construction which destroys the substance of the gift in controversy. This, in turn, means that we cannot concern ourselves about the interest which the children would have had in that gift. He evidently had them in mind, but the only consistent conclusion at which we can arrive is one which results in a failure of the entire gift, and the interest of the children fails with it.

For the reasons indicated, the decree of the lower court must be reversed, and this court will enter a decree construing the will in accordance with the views expressed in this opinion and remanding the cause for such further proceeding therein as may be proper.

*Reversed.*