## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### BORDEN AND OTHERS V. RIGBY, JR.

#### January 22, 1920.

1. WILLS—*Construction—Partnership Property—Case at Bar.*—A testator provided that after the payment of his debts "my property, both real and personal, in my own name and the name of James Rigby & Son" should be disposed of as follows: "One-half of all real estate and personal property in my own name and the name of James Rigby & Son to go to my only son James Rigby, Jr., of Cambria, Va. The other half of said property both real and personal in my own name and that of James Rigby & Son to be divided equally" between his three daughters.

    *Held:* That a reading of the will itself, without any light from extraneous sources, leads to the conclusion that it was the testator's intention to give one-half of his individual property and one-half of all the property of the firm to his son, and the other half to his three daughters. The mere fact that he speaks of some of the property as standing in the name of the firm does not necessarily imply that he was not the sole owner.

2. WILLS—*Construction—Extrinsic Evidence—Case at Bar.*—While the court could not reject the plain import of the language of the will, as set out in the preceding syllabus, unless, upon looking to the situation of the testator with reference to the property, a different construction must be adopted, yet in the instant case it was manifestly both necessary and proper to resort to extrinsic evidence, not for the purpose of contradicting or varying the terms of the will, but to show the testator's relation to the firm of James Rigby & Son.

3. WILLS—*Construction—Primary Rule—Situation of Testator.*— The primary rule of construction is to determine the intention of the testator from the language which he has used. If the meaning of his language is plain, the will must be given effect accordingly. This rule is familiar and elementary, and to it all others are subordinate and subservient. If there be doubt as to the meaning, then the auxiliary or

subordinate rule to be first applied, and the one of most usefulness and importance, is for the court to place itself as nearly as possible in the situation of the testator at the time of the execution of the will.

4. WILLS—*Construction—Partnership Property.*—A partnership was composed of the testator and his son, and the original partnership agreement constituted the son an equal partner, but with the qualification and condition that at the death of the father the firm assets then in hand should be equally divided, by the son taking one-half as his share and the mother, if living, and the three daughters the other half. The father's will provided that his property in his own name and in the name of the partnership should go one-half to his son and the other half to his three daughters.

*Held:* That the son under this will was not entitled to three-fourths of the property in the name of the firm, that is to say, one-half of testator's interest in addition to his share as partner.

5. PARTNERSHIP—*Deed to Partnership—Shares of Partners—Case at Bar.*—In the instant case the title to the real estate involved stood in the name of James Rigby, Sr., and James Rigby, Jr., as partners under the name of James Rigby & Son.

*Held:* That while this circumstance afforded *prima facie* evidence that the father and son were equal partners, yet it was rebutted by other evidence in the record to the contrary.

6. PARTNERSHIP—*Contract—Parol Evidence.*—It is competent to establish the terms of a partnership agreement by parol.

Appeal from a decree of the Circuit Court of Montgomery county. From a decree in favor of the named defendant, complainants appeal.

*Reversed.*

*Irvine & Stuart,* for the appellants.

*J. C. Noel,* for the appellee.

PER CURIAM.

This case involves the construction of the will of James

Rigby, Sr., which, so far as material for the purposes of this discussion, is as follows:

"It is my will that *my property*, both real and personal, in my own name and the name of James Rigby & Son, after the settlement of all just debts and claims be disposed of as follows: *One-half of all real estate and personal property in my own name and the name of James Rigby & Son to go to my only son James Rigby, Jr., of Cambria, Va. The other half of said property both real and personal in my own name and that of James Rigby & Son to be divided equally* as provided by the laws of the State of Virginia between my three daughters, namely, Emma R. Murdock, married; Mary S. Rigby, unmarried, and Belle R. Borden, married. It is also my desire that my son James Rigby, Jr., and my daughter Belle R. Borden be appointed as executors and administrators of my estate." (Italics supplied.)

[1-4] James Rigby, Jr., claims, and the decree appealed from held, that under the provisions of this will he is entitled to three-fourths of the property in the name of James Rigby & Son and one-half of the residue of the testator's estate. This claim is based upon the further claim that he was an equal partner with his father in the firm of James Rigby & Son. It is manifest, however, that this latter fact must be established by evidence outside of the will itself. From that instrument alone, it does not necessarily follow that James Rigby, Jr., was a member of the firm, or, indeed, that anybody except James Rigby, Sr., was interested therein.

Before looking to the evidence as to the organization and property of the firm of James Rigby & Son, let us consider the language of the will itself and ascertain its primary meaning. This language seems plainly to import that the testator was dealing with the entire real estate and personal property held in the name of James Rigby & Son as his own estate. A reading of the will itself, without any

light from extraneous sources, naturally and easily leads
to the conclusion that it was his intention *to give by that
instrument* one-half of his individual property and one-half
of all the property of the firm to his son, and the other half
to his three daughters. The mere fact that he speaks of
some of the porperty as standing in the name of a firm does
not necessarily imply that he was not the sole owner, for
it is not unusual for a single individual to conduct under
a firm or trade name a business owned exclusively by him.
The language he has used here is just the language which
he would naturally have used if he in fact had been the un-
qualified owner of the firm property and intended to give
one-half to the son and the other half to the daughters. He
unmistakably directs a division of all of it without using
any words to indicate that he expected a less interest than
the whole to be affected by the division. He says, "One-
half of *all* real estate and personal property in my own
name and in the name of James Rigby & Son" shall go to
the son, and "the other half *of said property*" to the three
daughters. The words "my property," employed by the
testator at the outset cannot be construed to conflict with
this view, but to the contrary seem rather to confirm the
idea that he was disposing of all the property in the part-
nership name as if it all belonged to him. The court cer-
tainly cannot reject this plain import of the language of
the will unless, upon looking to the situation of the testator
with reference to the property, a different construction
must be adopted. In this case it is manifestly both neces-
sary and proper to resort to extrinsic evidence, not for the
purpose of contradicting or varying the terms of the will,
but to show the testators relation to the firm of James Rig-
by & Son, and this, as we shall see, results in the disclosure
of a situation which throws much light on the testator's
view-point at the time he made the will. "The primary
rule of construction is to determine the intention of the

testator from the language he has used. If the meaning
of his language is plain, the will must be given effect ac-
cordingly. This rule is familiar and elementary, and to it
all others are subordinate and subservient. If there be
doubt as to the meaning, then the auxiliary or subordinate
rule to be next applied, and the one of most usefulness and
importance is for the court to place itself as nearly as pos-
sible in the situation of the testator at the time of the exe-
cution of the will." *Penick's Ex'r* v. *Walker,* 125 Va. 274,
99 S. E. 559, 560.

Turning then to the extrinsic evidence in this case, we
learn that the firm was composed of the testator and his
son, James Rigby, Jr., and that the original partnership
agreement did constitute the son an equal partner, but with
the important qualification and condition that at the death
of the father the firm assets then in hand should be equally
divided, the son taking one-half as his share and the mother
(if living) and the three daughters the other half.

It would accomplish no good purpose to review in detail
the evidence with reference to the contract between James
Rigby, Sr., and his son. The firm had been in existence since
about the year 1884, and there was never any written con-
tract between the parties. Mrs. Borden, one of the sisters,
who had contributed very materially to the success of the
firm, testified in a direct and positive way to the establish-
ment and conduct of the partnership in accordance with
the understanding as we have stated. She is corroborated
by other witnesses, and the testimony of James Rigby, Jr.,
to the contrary is unsatisfactory and fails in our opinion
to sustain his contention. In other words, upon a careful
consideration of all of the evidence, we are of opinion that
the weight of it shows that the partnership contract was
not as he claims, but as claimed by his sisters.

[5, 6] Much stress is laid by the appellee upon the fact
that the title to the real estate constituting the property of

chief value involved here, stood in the name of James Rigby, Sr., and James Rigby, Jr., as partners under the name of James Rigby & Son, and that the deed therefor showed upon its face that it was purchased with partnership funds. This circumstance, however, is not in conflict with the conclusion which we have reached. The deed, it is true, affords *prima facie* evidence that the father and son were equal partners, but as we have seen there is proof in the record to the contrary. This proof was by parol, but it is competent to establish the terms of a partnership agreement by parol, and the evidence thereof in this case does not violate any rule of evidence. It does not alter or vary the terms of the deed, but shows what the contract was and that contract, when established, determines the rights of the parties in the property.

The decree appealed from, therefore, will be reversed, and the cause remanded to the lower court to be further proceeded with not in conflict with the views expressed in this opinion.

*Reversed.*

BURKS, J., dissenting.