# Staunton.

## W. D. SNIDOW, GUARDIAN AD LITEM FOR JAMES MILLARD DILLS v. LILLIE B. DAY, ET ALS.

### September 23, 1926.

1. WILLS—*Construction—Intention of Testator—Rules for Determining.*—In construing a will the intention of the testator should be the guiding star, but this intention must be ascertained from the words used by the testator, read in the light of the language of the entire will and all the circumstances surrounding him at the time of its execution. The question is not what the testator intended to say, but what was his intention, as disclosed by what he did say. If the language used is clear and unequivocal, it must be taken to express the intention of the testator and must be given effect, unless it violates some rule of law. This rule is familiar and elementary, and to it all others are subordinate and subservient.

2. WILLS—*Life Estate—Devise Over to the Next of Kin—The Holder of the Life Estate Testator's Next of Kin—Case at Bar.*—In the instant case the testator, after giving his wife a life estate in certain real property, devised all his other real property and the real property which he had given to his wife for life, to his only daughter for life and provided that if the daughter died unmarried, the land should descend to his next of kin according to the statute of descents. The daughter survived the testator, never married and died before the widow, leaving an illegitimate child. The statute of descents (Code of 1919, sec. 5264) provides that "when any person having title to any real estate of inheritance shall die intestate as to such estate, it shall descend and pass, first, to his children and their descendents."

   *Held:* That subject to the life estate, the land descended to the testator's only child, his daughter, who was the next of kin according to the statute.

3. WILLS—*Remainder to Next of Kin—At what Time the Next of Kin is to be Determined.*—Where testator devises property for life with remainder over to the next of kin the next of kin is to be determined as of the death of the testator and not as of the death of a life tenant, the remainder after the life estate vests in the remaindermen immediately upon the death of the testator.

4. WILLS—*Devise of Life's Estate with Gift Over to the Next of Kin—Holder*

*of Life Estate as Next of Kin—Circumstances Held not to Show Inten-*
*tion to Exclude Holder of Life Estate—Case at Bar.*—In the instant
case a testator gave certain real property to his wife for her life,
while by another clause in his will he gave all of his other real prop-
erty and the remainder in the property devised to his wife for life to
his only daughter for life with remainder to his next of kin if the
daughter should die unmarried.

*Held:* That the fact that the testator gave his daughter certain
personal property and an equitable estate in land for life subject
to certain provisos and restrictions did not warrant the conclusion
that the will showed an intention to exclude his daughter from the
devise to his next of kin.

5. WILLS—*Life Estate with a Devise Over to the Next of Kin—Bastard—Case*
*at Bar.*—In the instant case testator gave his property to his only
daughter for life with remainder, if she should die unmarried, to his
next of kin. His daughter never married and died, after the death
of the testator, leaving an illegitimate child. Although a bastard,
under section 5268 of the Code of 1919, this child could inherit on
the part of his mother as if lawfully begotten. This section removes
all of his common law disabilities to inherit, not only from his
mother, but through or on the part of his mother's line of descent,
as if legitimate. Had the next of kin been determined as of the
death of the life tenant, the title to the property in question would
have vested in the bastard as his grandfather's next of kin and sole
heir at law.

6. WILLS—*Life Estate with a Devise Over to the Next of Kin—Holder of the*
*Life Estate Next of Kin of Testator—Bastard—Case at Bar.*—In the
instant case testator gave his property to his only daughter for life
with remainder, if she should die unmarried, to his next of kin. His
daughter never married and died, after the death of the testator,
leaving an illegitimate child. As the next of kin is to be ascertained
as of the death of the testator and not as of the death of the life
tenant, upon the death of the testator the land, subject to the life
estate vested in his daughter, his only child and next of kin, and
upon her death the title thereto vested in her illegitimate child and
the nephews and nieces of the testator and their descendents took
nothing under the will of the testator and are not entitled to any
interest in any part of the lands in which his daughter held a life
estate.

Appeal from a decree of the Circuit Court of Giles
county. Decree for complainants. Defendants appeal.

*Reversed.*

The opinion states the case.

*Hall & Buford* and *W. B. Snidow*, for the appellants.

*Jackson & Henson, Randolph G. Whittle, Jas. D. Johnstone* and *H. C. Gilmer*, for the appellees.

WEST, J., delivered the opinion of the court.

This case involves the construction of the will of John H. Wilburn, deceased.

John H. Wilburn executed his last will and testament on April 30, 1897, and died in 1906 at the age of seventy years. He was survived by his wife, Mandonia C. Wilburn, age fifty-two years, and by his daughter, Ada B. Wilburn, age eighteen years, who was his only child. The daughter never married and died in 1923, after giving birth to an illegitimate child, James Millard Dills, the defendant in this case. Mandonia O. Wilburn died in 1925.

By the first item of his will the testator gave to his wife, during her natural life and so long as she remained unmarried, 800 acres of land on Sugar Run, in Giles county, Virginia, known as the home place. By the second item he gave to his wife, during her natural life and so long as she remained unmarried, subject to the fifth clause of his will, all of his household and kitchen furniture and cattle, sheep, horses, hogs, cows and farming implements. By the third clause he gave his wife one thousand dollars in cash. By the fifth item he gave to his daughter the residue of his personal estate, including money, etc.; and upon the death or marriage of his wife, also all the household and kitchen furniture and other property mentioned in the second clause of his will. By the sixth item of his will it is

provided that his sister, Priscilla Wilburn, is to have the right to occupy during her natural life the house occupied by her, situate on the land on Sugar Run; and that his wife, so long as her rights continue in the said land, shall maintain, provide for and support his sister during her natural life; and that after his wife's rights in said lands have expired, his daughter shall maintain and provide for his sister during her natural life.

The fourth item reads as follows: "All of my other real estate lying in the county of Giles, State of Virginia, on Wolf creek and its waters, and all of my real estate in the county of Mercer, West Virginia, and any and all other real estate I may be the owner of and my said lands referred to above devised to my wife for life so long as she remains unmarried I devise to my daughter, Ada Bell Wilburn, for her life as her separate equitable estate and subject to the following provisions and restrictions in regard thereto: If she shall marry, the same shall be free from the marital rights of the husband, she shall not have the power to sell, alien, or dispose or charge or encumber the same or any part thereof, but shall be entitled to receive all the rents and profits thereof during her life.   *   *."

Upon the death of the testator's wife, Mandonia O. Wilburn, his nephews and nieces filed a bill against the infant, James Millard Dills, and others asking the court to construe item four of the will. The court held that Dills is not entitled, under the will, to any interest in the lands of the testator and that testator's nephews and nieces, and their descendants, are the owners thereof. From that decree this appeal was allowed.

The whole controversy hinges upon the proper construction of the following clause in item four of the

will: "If she die unmarried, then said lands shall descend unto my next of kin according to the statute of descents."

[1] In construing a will, the intention of the testator should be our guiding star, but this intention must be ascertained from the words used by the testator, read in the light of the language of the entire will and all the circumstances surrounding him at the time of its execution. The question is not what the testator intended to say, but what was his intention, as disclosed by what he did say. If the language used is clear and unequivocal, it must be taken to express the intention of the testator and must be given effect, unless it violates some rule of law. "This rule is familiar and elementary, and to it all others are subordinate and subservient." *Penick's Ex'or* v. *Walker*, 125 Va. 274, 99 S. E. 559; *Blankenbaker* v. *Early*, 132 Va. 599, 112 S. E. 599; *Smith* v. *Smith*, 122 Va. 341, 94 S. E. 777.

[2] Ada Bell Wilburn died unmarried, and the will says: "If she die unmarried, then said lands shall descend unto my next of kin according to the statute of descents."

The statute of descents (Code, sec. 5264) provides that "when any person having title to any real estate of inheritance shall die intestate as to such estate, it shall descend and pass—

"First, to his children and their descendants."

The statute is clear and plain and leaves no room for construction. It necessarily follows, from the language of the will, that, subject to the life estate, the lands descended to the testator's only child, Ada Bell Wilburn, who was the next of kin according to the statute.

[3] Whether the next of kin in such cases is to be determined as of the death of the testator, or as of the death of the life tenant, is a question upon which the

authorities outside of this jurisdiction are divided; but according to the weight of authority and the decisions of this court, the remainder, after the life estate, vests in the remainderman immediately upon the death of the testator.

In *Whall* v. *Converse*, 146 Mass. 345, 15 N. E. 660, the court said: "The general rule is settled that in cases of ultimate limitation like that of the fund in question to the testator's heirs at law, the persons to take are those who answer the description at the time of the testator's death. * * * *Abbot* v. *Bradstreet*, 3 Mass. 587. The reasons for this rule are that the words cannot be used properly to designate anybody else; that such a mode of ascertaining the beneficiaries implies that the testator has exhausted his specific wishes by the previous limitations, and is content thereafter to let the law take its course."

In *Stokes* v. *Van Wyck*, 83 Va. 724, 3 S. E. 387, the testator by his will gave land to his daughter and her husband in fee for their joint lives and the life of the survivor of them, with the remainder to her issue in fee, and said: "But if my said daughter should die without leaving such issue, then my will and devise is that after the death of my son-in-law * * * the land and plantation should pass and descend to my heirs according to the laws of descent in Virginia." The daughter was the only child and heir living at the date of his will and at his death. The court held that the remainder vested in the daughter in fee simple upon the death of the testator, subject to be terminated upon her death with issue living. The daughter died without ever having issue. She sold and conveyed the land and the court held that her deed gave the grantees a perfect title.

In *Allison* v. *Allison*, 101 Va. 537, 44 S. E. 904, 63

L. R. A. 920, the testator, after making certain bequests, gave the residue of his estate to his executor in trust for the sole and separate use of his daughter, Dora, wife of Thomas L. Moore, to hold for her benefit during her natural life, free from the control of her husband, and "at her death to be equally divided among her children, should any survive her; if she should die without issue, or if her surviving child should die before becoming of age, then the property bequeathed for the benefit of my daughter is to be divided among my heirs at law according to the laws of the State of Virginia." Judge Keith, speaking for the court, reviews at length the English and American authorities upon the question, whether the testator intended that his ultimate bequest to his heirs at law should be to his heirs at law living at his death, or those living at the death of the life tenant, approved the doctrine laid down in *Stokes* v. *Van Wyck, supra,* and held that according to the "overwhelming weight of authority in England and in this country" the heirs are to be ascertained as of the death of the testator. Judge Keith says: "We are therefore of opinion, with respect to the residuary clause, that it creates a life estate in Mrs. Dora Moore, a contingent fee in her child or children, and upon a failure of these intervening estates, the ultimate remainder which is up to that time contingent, will vest in those who were the heirs at law of the testator at his death."

In *Fontaine* v. *Thompson,* 80 Va. 229, 56 Am. Rep. 588, where the testatrix devised her property to her brother, William Fontaine, as trustee, to be distributed "among my next of kin   *   *," it was contended that she intended to exclude the brother from the class, "next of kin." The court at page 234 said: "We think he ought not to be excluded, unless by the force

of plain words.  *  *  *  The party once coming within the designated class, without plain and express words to exclude him, should not be excluded." The court held that William was entitled to share as one of the "next of kin."

[4] We find no merit in the contention of the appellees that the will shows an intention on the part of the testator to exclude his daughter, Ada Bell Wilburn, from participation in the residuum of the estate after the expiration of the life estate. The fact that the testator gives her certain personal property and an equitable estate in land for life subject to certain provisos and restrictions does not warrant such a conclusion, and this court so held in construing a will containing similar provisions. *Allison* v. *Allison, supra.*

At the time the will was written, the testator was sixty-one, his wife forty-three and his daughter nine years old. It will be assumed that he realized that there might be other children born of their marriage. He desired to make special provision for his wife and only daughter for the period of their natural lives, which he did. This done he was willing that the residue of his estate should pass and descend to his next of kin "according to the statute of descents," knowing that his living daughter and any after-born child or children or their descendants would inherit the same.

Ada Bell Wilburn was her father's only child and naturally the chief object of his love and liberality. He makes no reference in his will to his brothers and sisters, or their descendants, and we find nothing therein to support the conclusion that he ever intended that his property should go to them, to the exclusion of his only daughter who was nearest in blood to him.

Counsel for appellees, to sustain their contention,

rely on *Close* v. *Benham*, 97 Conn. 102, 115 Atl. 626, 20 A. L. R. 351, and *Smith* v. *Winsor*, 239 Ill. 567, 88 N. E. 482.

These cases, in holding that, where a life estate is given with remainder over to the testator's heirs or others it must be presumed that the testator intended to exclude the life tenant from those who are entitled to take after the life estate, unless the language of the will manifests a contrary intention; and in holding that the fact that the life tenant is the sole heir will make the estate vest at the death of the life tenant instead of at the death of the testator, are in conflict with the decisions of this court already referred to, and are not controlling here.

Many other cases are cited and discussed by appellees, but we deem it unnecessary to review them, since the questions upon which the decision in the instant case must rest have been settled by this court in accordance with the contention of the appellants.

[5] It is admitted that James Millard Dills, although a bastard, can inherit on the part of his mother as if lawfully begotten. Code, section 5268. This section removes all of his common law disabilities to inherit, not only from his mother, but through or on the part of his mother's line of descent, as if legitimate. Had the next of kin been determined as of the death of the life tenant, the title to the property in question would have vested in him as his grandfather's next of kin and sole heir at law.

[6] Having reached the conclusion that the next of kin are to be ascertained as of the death of the testator and not as of the death of the life tenant, we are of the opinion that upon the death of the testator the land, subject to the life estates, vested in Ada Bell Wilburn, his only child and next of kin, and that upon her death

the title thereto vested in her child, James Millard Dills, and that the nephews and nieces of the testator and their descendants take nothing under the will of the testator and are not entitled to any interest in any part of the said lands in which Ada Bell Wilburn held a life estate.

The decree will be reversed.

*Reversed.*