# CHARLESTON.

WILLIAM HEWITT BURCHE *v.* KATE T. NEAL *et al.*

(No. C. C. 423)

Submitted September 4, 1929.   Decided September 10, 1929.

*Noble, Ayers, McCorkle & Fair,* and *Geo. W. Johnson,* for plaintiff.

*F. P. Moats,* for defendants.

MAXWELL, JUDGE:

This case is here on certification from Wood County. In 1872 S. Q. A. Burche conveyed to H. H. Moss, trustee, for Fannie S. Burche, wife of grantor, two lots and a dwelling located in Parkersburg. The habendum clause of the deed is as follows:

> "To have and to hold the said premises with the appurtenances unto the said H. H. Moss, trustee, for the sole use and benefit of the said Fannie S. Burche; but whereas, should the said Fannie S. Burche die and leave no living issue by her present husband, then the above described property shall revert and be vested in the said S. Q. A. Burche or his heirs."

S. Q. A. Burche died childless in 1878. Surving him were his widow and several collateral heirs. These heirs, save Helen Elizabeth Burche, a niece, by two deeds of 1878 and 1882, respectively, conveyed to said Fannie S. Burche all the right, title and interest of which they were seized in the said real estate.

Fannie S. Burche continued in occupancy of the property until her death in 1925, almost half a century after the death of her husband. By her last will and testament she undertook to devise the property to her two sisters Eva P. Christie and Laura V. Talbott through whom the defendants, Kate N. Burche, Kate T. Neal, Frances T. Burnside and John O. Talbott, now claim title by descent save as to the interest therein of Helen Elizabeth Burche.

The plaintiff, William Hewitt Burche, claims an interest in said real estate as an heir of S. Q. A. Burche living in 1925 at the death of Fannie S. Burche. The defendants other than the persons above mentioned are alleged by the plaintiff to stand in the same position as himself, namely, as heirs of S. Q. A. Burche living at the death of his widow. The contention is that the title to said real estate did not vest in the heirs of S. Q. A. Burche upon his death, and that the same did not vest until the death of the widow, when it passed to the then living heirs of S. Q. A. Burche. The prayer of the bill is that the deeds of 1878 and 1882, respectively, be

set aside as clouds upon the title of the plaintiff and the defendants similarly situated, and that the property be partitioned among the heirs of S. Q. A. Burche living at the widow's death. The circuit court overruled the demurrer of defendants who claim through Fannie S. Burche.

Subject to the right of enjoyment of Fannie S. Burche, when did the fee vest? There were no children. Did the estate determine upon the death of the grantor, or was the death of his widow the moment of vesting?

First, let us determine the nature of the estate created in the beneficiary by S. Q. A. Burche in his deed to Moss, trustee. "To have and to hold * * * for the sole use and benefit of the said Fannie S. Burche; but whereas, should the said Fannie S. Burche die and leave no living issue by her present husband, then the above described property shall revert and be vested in the said S. Q. A. Burche or his heirs." By the first part of this clause it appears that Fannie S. Burche received a fee simple; the grantor thereby granted the entire estate to her, but he did not stop there. He qualified the grant and made it dependent upon offspring born to the beneficiary and himself. He lowered the dignity of the fee simple to that of a qualified, base or determinable fee. Kent defines such fee as "an interest which may continue forever, but the estate is liable to be determined without the aid of a conveyance, by some act or event, circumscribing its continuance or extent." Commentaries 4, page 8. Minor characterizes it thus: "A fee qualified or base fee, though an estate of inheritance and at common law requiring, like a fee simple, the word 'heirs' for its creation, is to be distinguished from the fee simple by the characteristic that it is liable to terminate regularly, not only upon a total failure of heirs (in which case it escheats, just as a fee simple would do), but also by running out its regular course without a failure of the tenant's heirs. It may by its general limitation continue forever, but it is subject to some further limitation by virtue of which it may terminate at any moment upon the occurrence of a designated contingency." Minor on Real Property 2nd Ed.), Vol. 1, page 225. In Bouvier's Dictionary a determinable fee is defined as "One which has a qualification

subjoined to it, and which must be determined whenever the qualification annexed to it is at an end." See also 2 Minor's Institutes, page 77; 1 Lomax's Digest, page 331. Littleton says: "It is called a condition when something is given on an uncertain event, which may or may not come into existence." Co. Litt., Vol. 2, page 1.

Definitions could be multiplied uselessly. It would seem sufficiently clear that at the moment S. Q. A. Burche executed the deed to Moss, trustee, the beneficiary became possessed of a fee in the real estate in controversy which might or might not be absolute. It was conditional or determinable. But by its very meaning a determinable fee indicates that there must be some place where the fee simple will become vested; where the element of uncertainty will be established. There must be some final resting place. With what expectancy were S. Q. A. Burche and his heirs possessed upon the making of this deed? There was the plain possibility that the property might vest in them. The books express their interest as a possibility of reverter. "A reversion should be distinguished from a possibility of reverter which, according to modern technical notions, arises upon a grant so limited that it may last forever or may terminate on a contingency; it is the possibility of having the fee again which exists in a grantor after the grant of a determinable or qualified fee." 21 C. J., page 1017. See also Minor on Real Property, 2nd Ed.), Vol. 1, page 1012. When was the possibility of reverter to the grantor and his heirs to be brought to a head? The answer is: at the instant when there no longer remained the possibility of the estate remaining absolute in the beneficiary and her heirs under the terms of the deed. That time arrived ten months after the death of the husband. The qualification attached to the title of Fannie S. Burche was not that she should die, but that she should "leave living issue by her present husband". Having no child living at the death of her said husband, the impossibility of her having issue by him became fixed and determined at the time above stated. What possible reason could there have been for suspending the fee simple title in nubibus thereafter until Mrs. Burche's death? Evidently none. The settled policy of the law opposes uncertainty of

title and favors the vesting of estates. *Stout* v. *Clifford,* 70 W. Va. 178; *Suter* v. *Suter,* 68 W. Va. 690. That principle should apply here, no intent of the grantor nor other reason appearing to the contrary.

For reasons aforesaid we reverse the decree of the trial chancellor, sustain the demurrer to the bill and dismiss the cause.

*Reversed and rendered.*