# Richmond

## S. J. Braswell and W. H. Braswell v. Charles Madison Braswell.

May 3, 1954.

Record No. 4207.

Present, Hudgins, C.J., and Eggleston, Spratley, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Thomas. L. Woodward* and *Edwin C. Ferguson, Jr.,* for the appellants.

*A. E. S. Stephens* and *Rodham T. Delk,* for the appellee.

SMITH, J., delivered the opinion of the court.

By deed dated May 2, 1903, James J. Braswell conveyed a tract of land containing 37 acres which he owned in fee simple to his son, Nathaniel T. Braswell, "during his natural life and to his lawful heirs at his death, and if said Nathaniel T. Braswell should die leaving no lawful heir from his body, then the land herein conveyed shall revert back to the said James J. Braswell or to his lawful heirs."

The grantor, James J. Braswell, died intestate in 1932, leaving surviving him, as his sole heirs at law, three sons; S. J. Braswell, W. H. Braswell and Nathaniel T. Braswell, the life tenant. Nathaniel T. Braswell died testate and without issue in 1952, devising all his real property to Charles Madison Braswell.

Charles Madison Braswell, devisee of Nathaniel T. Braswell, instituted this suit against S. J. and W. H. Braswell for partition under Code, § 8-690 *et seq.*; his bill alleged that he was the owner as tenant in common of a one third undivided interest in the land conveyed in the deed of 1903. The trial court upheld this claim of ownership. The correctness of the claim and of the trial court's decision is to be determined from a proper construction of the quoted portion of the deed.

The first aspect of the limitation in the deed creates a life estate in Nathaniel T. Braswell with a contingent remainder in fee simple in his unborn issue. 1 Minor on Real Property, (2d ed., Ribble), § 717, p. 941. This is a clear example of the type of limitation once controlled by the rule in Shelley's case, which rule was finally abolished in

Virginia in the code of 1887, long before the date of this deed. See Code, § 55-14. Here, however, the contingent remainder never vested because the life tenant died without issue, and therefore we need not be concerned with it further. It is the second aspect of the limitation, that the land "shall revert back to the said James J. Braswell or to his lawful heirs," if the life tenant should die without heirs of his body, that creates the difficult problem of construction; namely, whether the second aspect of the limitation is a reversion or remainder.

It is necessary to consider briefly the distinctions made by Mr. Minor in his work on real property and quoted with approval in *Copenhaver* v. *Pendleton*, 155 Va. 463, 477, 155 S. E. 802, 77 A. L. R. 324, as follows:

" 'A remainder is defined to be "what is *left*" of an *entire grant* of lands or tenements after a *preceding part* of the *same grant or estate* has been disposed of in possession, whose regular *expiration* the remainder must await.' 1 Minor on Real Prop. (2d ed.), section 702, page 916.

" 'A reversion is the remnant of an estate *continuing in the grantor*, undisposed of, after the grant of a part of his interest. It differs from a *remainder* in that it arises by *act of the law*, whereas a remainder is by *act of the parties*. A reversion, moreover, is the remnant *left in the grantor*, whilst a remainder is the remnant of the whole estate disposed of, after a preceding part of the same has been given away.' 1 Minor on Real Prop. (2d ed.), section 769, page 1005."

The common law rule as to contingent remainders limited to the grantor's or testator's heirs, is stated in 1 Minor on Real Property, (2d ed., Ribble), §§ 720, 721, pp. 947, 948, as follows: " * * * it is a rule of the common law, which is always eager to discriminate carefully between the acquisition of land *by descent* and *by purchase*, respectively, that if land is limited by way of remainder (so called) to the *heirs of the grantor* (or *testator*), this does not create a *contingent remainder* in the grantor's or testator's heirs,

but is simply a reservation by the grantor or testator of the *reversion after the particular estate granted.* * * * But the reason for the rule as well as the rule itself ceases to apply, if we suppose other words added to the word *heirs, etc.,* which show that the grantor or testator did not have in mind the technical meaning of the word 'heirs,' etc., but employed it to describe and designate *certain definite persons in being.*"

This common law rule, when applied to deeds, is sometimes referred to as the inter vivos branch of the doctrine of worthier title, sometimes as the rule against a remainder to the grantor's heirs and at other times as the conveyor-heir rule.[1]

An excellent statement of the rule and its present status is found in 16 A. L. R. (2d) 691, at page 693, as follows:

"The doctrine of the English common law was that an inter vivos conveyance for life, with remainder to the heirs or next of kin of the conveyor is ineffective to create a remainder, but leaves in the conveyor a reversion which will pass by operation of law upon his death, unless he otherwise disposes of it. Although abrogated in England by the Inheritance Act of 1833 (3 & 4 Wm. IV, ch. 106, § 3), this common-law doctrine has been recognized and given effect in a substantial number of the American jurisdictions, usually,

---

[1] See, *Case v. Case,* 207 Okla. 681, 252 P. (2d) 432; *Dreyer v. Lange,* 74 Ariz. 39, 243 P. (2d) 468; *McKenna v. Seattle-First Nat. Bank,* 35 Wash. (2d) 662, 214 P. (2d) 664, and the appended annotation in 16 A. L. R. (2d) 691; *Wilcoxen v. Owen,* 237 Ala. 169, 185 So. 897, and the appended annotation in 125 A. L. R. 548.

See also, Restatement of Property, § 314, p. 1776, *et seq.*; 1 Simes, Law of Future Interests, § 144, p. 259, *et seq.*; 3 Walsh, Law of Real Property, § 289, p. 83 *et seq.*; 3 Powell on Real Property, Para. 381, p. 260 *et seq.*; 1 American Law of Property, § 4.19, p. 437 *et seq.*

Some of the numerous articles on the subject are: J. Wesley Oler, "Remainders" to Conveyors' Heirs or Next of Kin, 44 Dickinson L. Rev. 247; Limitation to the Heirs of a Settlor, 34 Ill. L. Rev. 835; Professor Simes, Fifty Years of Future Interests, 50 Harv. L. Rev. 749; Professor Edward H. Warren, A Remainder to the Grantor's Heirs, 22 Tex. L. Rev. 22; Limitations to Settlors' Heirs, 37 Cal. L. Rev. 283; Limitations to Heirs of the Grantor, 39 Col. L. Rev. 628; Professor Russell R. Reno, The Doctrine of Worthier Title as Applied in Maryland, 4 Md. L. Rev. 50.

however, in the modified form of a rule or precept of construction rather than as an absolute rule of law."

It was this rule that Mr. Justice Eggleston was referring to in *Bottimore* v. *First-Merchants Bank*, 170 Va. 221, 230, 196 S. E. 593, when he used the following language from *Stephens* v. *Moore*, 298 Mo. 215, 249 S. W. 601: "'It is the generally accepted rule that, where there is a grant to one for life, with remainder to the heirs of the grantor, there is in fact no remainder; for the limitation, though denominated a remainder, continues in the grantor as his old reversion, and does not devolve upon his heirs as purchasers, as it would if it were a remainder, but as his heirs.'" See *Phillips* v. *Wells*, 147 Va. 1030, 133 S. E. 581; *Birthright* v. *Hall*, 3 Munf. 536; *Burche* v. *Neal*, 107 W. Va. 559, 149 S. E. 611; *Copenhaver* v. *Pendleton*, supra.

This rule against a remainder to the grantor's heirs had its origin in feudal custom which preferred to have real property pass by the "worthier" channel of descent, rather than by the less worthy channel of purchase, and although the reason for the rule disappeared with the abolition of feudalism, the rule itself remained. The rule probably arose to prevent the overlord from being deprived of the fruits of his seigniory. *In Re Burchell's Estate*, 299 N. Y. 351, 87 N. E. (2d) 293; *Richardson* v. *Richardson*, 298 N. Y. 135, 81 N. E. (2d) 54; *Wilcoxen* v. *Owen*, 237 Ala. 169, 185 So. 897, 125 A. L. R. 539. See also 1 Simes, Law of Future Interests, § 145, p. 261. Further justification for the rule has been found in the rationalization that it ordinarily effectuates the intention of the grantor. *McKenna* v. *Seattle-First Nat. Bank*, 35 Wash. (2d) 662, 214 P. (2d) 664, 16 A. L. R. (2d) 691. See *Bixby* v. *California Trust Co.*, 33 Cal. (2d) 495, 202 P. (2d) 1018. An additional reason is expressed in the maxim *nemo est haeres viventis*— no one is heir of the living. *Doctor* v. *Hughes*, 225 N. Y. 305, 122 N. E. 221.

Prior to its abolition in England, this doctrine seems to have been a rule of law rather than a rule of construction.

The modern trend, however, is to regard it as a rule of construction rather than one of property. This view, as rationalized by Judge Cardozo in *Doctor* v. *Hughes, supra*, is supported by the best considered opinions and by most of the text writers on the subject.[2] For an excellent opinion supporting this view, see the *McKenna* case, *supra*. See, however, *In Re Brolasky's Estate*, 302 Pa. 439, 153 A. 739, and *Robinson* v. *Blankenship*, 116 Tenn. 394, 92 S. W. 854, holding the rule one of property, to be applied regardless of intent.

The court in *In Re Burchell's Estate, supra*, was speaking of the modern trend as expressed in the *Doctor* case, *supra*, when it said that "the use of the old doctrine as a rule of construction results in either (1) a shift from an absolute rule against remainders to heirs of grantors to a rule that the grantor must expressly indicate his intention to create a remainder in his heirs; or (2) a presumption in favor of reversions which may be rebutted by indication of the grantor's contrary intent gathered from the instrument as a whole. The practice adopted in the majority of States falls into the second classification." (Citing cases).

Hence, for the rule against remainders to heirs of grantors to be applied: (1) There must be an inter vivos transfer, (2) if the subject matter be realty there must be a limitation to the grantor's "heirs" (used in its technical meaning of indefinite succession) or an equivalent limitation. In applying the doctrine, the better view is that there is a presumption in favor of reversions which presumption may be rebutted by a contrary intent gathered from the instrument as a whole.

▆ The rule does not apply if the limitation is construed to mean that the property was intended to pass to the heirs of the grantor, or upon an equivalent limitation, determined at some time other than the death of the grantor. *Allison* v. *Allison*, 101 Va. 537, 44 S. E. 904, 63 L. R. A. 920;

[2] See footnote 1, *supra*.

*Gray* v. *Union Trust Co.*, 171 Cal. 637, 154 P. 306; 1 Minor on Real Property, (2d ed., Ribble), §§ 717, 720, pp. 943, 948, and cases there cited. Here it is contended that the rule against remainders does not apply because by the use of the word "then" the grantor meant to fix the time of the ascertainment of his heirs at the date of the life tenant's death rather than the date of the grantor's death.

In support of this contention for an exception to the general rule that heirs of the grantor are usually determined as of the date of the grantor's death, we are referred to *Driskill* v. *Carwile*, 145 Va. 116, 118, 133 S. E. 773, in which the following provision of a will was under consideration: "the said property I give unto Nannie P. Moon during her life and that of her husband, Nathan S. Moon, and at their decease, I direct the same to be sold and equally divided between the living heirs of my brothers and sisters." It was held that by the use of the words "living heirs," under the circumstances of that case, the testator intended the beneficiaries to be those who were living at the time of the death of the last life tenant. Had the grantor in the deed before us had this in mind it would have been simple for him to have used the word "living."

We are also referred to *Callis* v. *Ripley*, 161 Va. 472, 474, 171 S. E. 497, in which the language used in a will there involved provided for a life estate and that if the life tenant should die leaving no lawful issue of his body, "then the said land and improvements shall be equally divided with my next surviving heirs." It was held that the use of the word "then" in connection with the words "my next surviving heirs" indicated that the testator intended the beneficiaries to be those who were living at the death of the life tenant. Again there is no such language used in the instant limitation.

On the other hand, there is the case of *Allison* v. *Allison*, 101 Va. 537, 540, 44 S. E. 904, in which the etstator used this language following a life estate: "and at her [life tenant's] death be equally divided among her children, should

any survive her—if she should die without issue, or if her surviving child or children should die before becoming of age, then the property bequeathed for the benefit of my daughter is to be divided among my heirs at law according to the laws of the State of Virginia." It was held that the last clause referred to those persons who answered the description of the testator's heirs at the time of his death and not at the death of the life tenant. See review of cases in *Snidow* v. *Day*, 145 Va. 721, 134 S. E. 704.

A very recent case presenting language almost identical with that now under consideration is *Cochran* v. *Frierson*, —— Tenn. ——, 258 S. W. (2d) 748. There the deed conveyed land to the grantor's daughter for life and then to the daughter's children and issue of any child of the daughter who might be dead upon termination of the life estate and provided that: "In default of children or issue" of the life tenant "then said tract of land will revert to the undersigned Kate S. Stephenson, [grantor] or her heirs." It was held that the limitation to the grantor or her heirs was a reversion and not a remainder, and that the reversion passed to the grantor's daughter on the death of the grantor intestate before the death of the daughter, thereby vesting in the daughter a fee simple which upon the death of the daughter without issue passed under her will to her devisees.

The only language used in the limitation before us which might tend to indicate the word "heirs" was not used to embrace those persons who corresponded to the description at the time of the grantor's death, is the word "then." The grantor said, " * * * if the said Nathaniel T. Braswell should die leaving no lawful heir from his body, *then* the land herein conveyed shall revert back to James J. Braswell or his lawful heirs." This use of the word "then" only fixes the time when it is determined whether the life tenant died without issue of his body and does not fix the time for ascertaining the heirs of the grantor. Also, there is significance to be accorded the word "revert." Cf., *Jiggetts* v. *Davis*, 1 Leigh

(28 Va.) 404, 407; *Lusk's Estate*, 354 Pa. 6, 46 A. (2d) 494, 169 A. L. R. 204; *Wilcoxen* v. *Owen, supra*. By using the word "then" in conjunction with the word "revert," and without other language to the contrary, the grantor clearly intended that if the life tenant should die without issue of his body, "in that case" the land should "come back," and pass as if no conveyance had been made.

Thus under the construction most favorable to the appellants, we are unable to find in the language of this deed anything which would warrant us in disregarding the common law rule against remainders to the grantor's heirs, nor any valid basis for holding the word "heirs" to signify anything other than its normal and technical meaning of indefinite succession as determined at the death of the grantor. The common law rule, not having been abrogated in Virginia, is controlling. James J. Braswell upon the execution of the deed of 1903 retained a reversion in the 37 acre tract of land. Then upon his death intestate in 1932, his reversion passed to his three sons in equal shares, and upon Nathaniel T. Braswell's death testate and without issue in 1952, his one third interest in the reversion which he inherited from James J. Braswell passed to his devisee, Charles Madison Braswell. The decision of the trial court so finding is correct.

*Affirmed.*