# Richmond

## FRED M. DAVIS v. THE LYNCHBURG NATIONAL BANK & TRUST COMPANY, TRUSTEE, ET AL.

April 23, 1956.

Record No. 4522.

Present, All the Justices.

The opinion states the case.

*Samuel H. Williams (Williams, Robertson, Sackett & Blackburn* on brief), for the appellant.

*S. Thomas Martin (Thomas J. Williams* on brief), for the appellees.

EGGLESTON, J., delivered the opinion of the court.

Creed Wills Davis died on November 8, 1932, leaving a will by which he devised and bequeathed his entire estate, after the payment of his debts, to the Lynchburg National Bank & Trust Company for the benefit of his daughter, Annie Virginia Davis, directing it to pay her the income therefrom as long as she should live. The trustee was given authority in its discretion to encroach upon the principal of the trust fund for the daughter's maintenance. In the following clause the testator directed that such portion of the trust fund and estate as should remain at the daughter's death, after the payment of her funeral expenses, should pass as directed in her will. Then followed this provision, the interpretation of which is the subject of the present litigation:

"(E) If my daughter, upon her death, dies intestate or leaves a will wherein the power of appointment is not therein exercised, then my said trust fund estate shall cease to be impressed with a trust and shall revert to and become my estate."

The bank qualified as executor of the will and later as trustee thereunder and took over and administered an estate valued at about $33,000. During the lifetime of Annie Virginia Davis the trustee paid to her the income from the trust estate and encroached to some extent upon the principal.

On January 10, 1954, Miss Davis died leaving a will by which she did not exercise the power of disposition granted to her under the will of her father. Shortly thereafter the trustee bank filed a bill in the court below alleging the above facts and praying for an interpretation of the will and directions as to whom the corpus of the estate should be paid. It alleged that upon his death Creed Wills Davis left surviving him as his sole heir at law his daughter, Annie Virginia Davis; that upon her death Annie Virginia Davis left surviving her as her heirs at law a cousin, Fred M. Davis, the only son of her father's brother, Micajah P. Davis; Samuel Lybrook, a brother of her mother, Virginia Lybrook Davis; William M. Lybrook, Jr., the only son of William M. Lybrook, a deceased brother of Virginia Lybrook Davis; and Grace Lybrook Seay and Frances Lybrook Blankenship, the only children of Raymond Lybrook, another deceased brother of Virginia Lybrook Davis.

It was further alleged that the will was ambiguous in that it failed to specify whether the trust fund became a part of the estate of the testator, Creed Wills Davis, as of the time of his death, in which event it passed and descended to his daughter, Annie Virginia Davis, and thence upon her death to her heirs above named, or whether it became a part of testator's estate as of the time of the death of his daughter, Annie Virginia Davis, in which event it passed to Fred M. Davis as the sole heir of testator.

Fred M. Davis filed an answer alleging that under the provisions of the will the testator devised the trust estate "to a class of persons who, under the Virginia Statute(s) of Descent and Distribution, constituted his heirs at the time of the death of his daughter," and that since he, Fred M. Davis, was the sole heir of the testator as of that time, he was entitled to the entire trust estate after the payment of the costs of administration and inheritance taxes.

In the answers filed by or on behalf of the Lybrooks and other maternal kindred of Annie Virginia Davis, it was alleged that under the proper interpretation of the will of Creed Wills Davis the testator retained in himself "the fee simple and absolute reversion in said residuum, subject to being divested only by the exercise" of the power in the daughter to appoint by will, and that upon the death of the testator "intestate as to the said reversion," it passed and descended to his daughter and sole heir at law, subject to the aforesaid trust, and upon her death "intestate as to the said residuum," it passed to

her heirs, one-half to her nearest paternal kindred, Fred M. Davis, and one-half to her nearest maternal kindred, the Lybrooks.

These answers further alleged that the will of the testator neither "creates nor attempts to create any remainder interest upon the termination of the trust" established for the use and benefit of the daughter, Annie Virginia Davis.

Depositions were taken on behalf of Fred M. Davis which showed the domestic and occupational situation of the testator and his relations with his Davis kin as contrasted with his wife's relatives.

The lower court entered a final decree which in substance upheld the contention of the Lybrooks and other maternal kindred of Annie Virginia Davis. It held that there was no ambiguity in the will which justified it in considering the "declarations of the testator or other extrinsic evidence" in interpreting the will; "that the plain intent of the testator, as expressed in his will, was that if his daughter, Annie Virginia Davis, should die without a will or leave a will in which she failed to exercise the power of appointment granted her (which latter contingency did in fact occur), the trust estate mentioned and referred to in said will should revert to and become a part of the decedent's estate; that the testator thereby retained a reversion in said trust estate, and as the testator did not designate in his will any person or class of persons as ultimate beneficiaries of said reversion, he died intestate as to said reversion and the same upon his death passed and descended" to Annie Virginia Davis, his sole heir at law and distributee as of the date of his death; and that since Annie Virginia Davis in her will "did not dispose of the reversion which she inherited from her father, she died intestate as to the same and accordingly said estate passed to her heirs at law," one-half thereof to Fred M. Davis, her nearest paternal kindred, and the other half to the Lybrooks, her nearest maternal kindred. From this decree the defendant, Fred M. Davis, has appealed.

■ The first assignment of error is that the lower court erred in holding that there is no ambiguity in the language used by the testator which justifies or warrants the consideration of the "declarations of the testator or other extrinsic evidence to show surrounding facts, circumstances or the intention of the testator."

We agree with the concession in appellant's brief that, "This assignment is entirely subordinate to the second assignment and of itself is hardly of sufficient importance to justify argument." It is elementary that in construing a will the intention of the testator must

be gathered from the language used by him and not from facts and circumstances which tend to show he intended to say something else. *Chavis* v. *Myrick*, 190 Va. 875, 878, 58 S. E. 2d 881, 883, and cases there cited.

Here the language of the will is plain and unambiguous. While there may be a difference of opinion as to the true legal consequence of the language used, this must be determined from a consideration of the language itself and the application of proper legal principles.

■ The main contention of the appellant is that "the trial court erred in concluding that the *time* for ascertaining testator's heirs who will take the estate when the daughter dies without exercising the power of appointment, is the death of the testator and not the death of the life tenant."

The appellant concedes that if in Clause E the testator failed to dispose of the residuum of the trust estate and died intestate as to it, in the event his daughter failed to exercise the power of disposition, then a true reversion continued in the grantor which passed to his daughter as his sole heir at law at the date of his death. But the appellant insists that the testator did not die interstate as to the residuum of the trust estate in the event that the daughter failed to exercise the power of disposition granted to her; that the lower court's finding of intestacy is inconsistent with an evident intent of disposition; and that the testator disposed of such residuum in the eventuality by creating a remainder after the life estate to the daughter to a class of persons who would be his heirs at the time of his daughter's death. He says that Clause E "is the equivalent of a statement by the testator, reading thus: If my daughter upon her death leaves a will wherein the power of appointment is not exercised, then my trust fund estate shall cease to be impressed with a trust and shall become my estate and pass to my heirs at law as of the date of my daughter's death."

The appellant argues that when the testator said that in the event his daughter did not exercise the power of disposition the trust estate "shall become my estate," he intended that it should pass to those persons who would take his estate as his heirs and distributees according to the statutes of descent and distribution. This, he says, is "not classified as intestacy." Assuming this to be true, the language used by the testator does not indicate at what time his heirs and distributees are to be ascertained, whether at the time of his death or at the time of the death of the life tenant, his daughter. The appellant under-

takes to supply this essential by arguing that the fact that the testator attempted to dispose of the residue of the trust estate shows that he did not intend that this property should go to his heirs and distributees ascertained at the time of his death, which would be the result if he had died intestate as to such residue. Hence, the appellant says, this shows an intent by the testator to adopt the other time, namely, the time of the death of his daughter as the determinative date, which would produce a different result. This argument is, of course, entirely speculative.

We find in the language of the testator no expression of intent that in the eventuality of the daughter's failure to exercise the power of disposition granted her the trust estate should pass to his heirs at law as of the date of his daughter's death. To add the words suggested by appellant would be to rewrite the clause.

The appellant further argues that the "theory of reversion, vesting title in the daughter" at the date of the death of the testator, "runs counter to the very clear plan of the testator" that legal title to the trust property is vested in the trustee and not in the daughter; that the trustee and not the daughter is given discretionary power to expend a portion of the corpus for her benefit; and that by the terms of the will she is given the power to dispose of the residue by her will. The appellant says that if the daughter inherited the reversion there would be no purpose in these provisions for her benefit.

We do not agree with this contention. These provisions in the will established a trust for the daughter, under the terms of which she had the right to enjoy the estate for her life, but only in the manner prescribed. She had the right to dispose of the residue only in the manner therein prescribed, that is, by her will. These were very definite limitations on her right to enjoy the estate and to dispose of the residue. Not until her death without having exercised the power of disposition in the manner therein prescribed did the residue revert to and become a part of testator's estate, under the provision in Clause E. It is this reversion, for which no testamentary disposition is made, that the decree appealed from holds passed by inheritance and descent to the daughter.

We agree with the lower court that under the proper interpretation of Clause E the testator retained a reversion in the trust estate subject to the life trust provided for his daughter and subject to be divested by the exercise of the power of disposition granted to her.

In 1 Minor on Real Property (2d ed., Ribble), § 769, p. 1005, in defining and speaking of the nature of a reversion, the author says:

"A reversion is the remnant of an estate *continuing in the grantor* undisposed of, after the grant of a part of his interest. It differs from a *remainder* in that it arises by *act of the law*, whereas a remainder is by *act of the parties*. A reversion, moreover, is the remnant *left in the grantor*, whilst a remainder is the *remnant of the whole estate disposed of*, after a preceding part of the same has been given away. It is called a *reversion* from the *returning* of the *land* to the possession of the grantor or his heirs, after the estate granted is ended. * * *

"From the nature of a reversion it is obvious, as has been said, that it is not *created*, but arises by *construction of law*, and that it supposes that the grantor has not parted with his *whole estate*. * * *"

Applying these principles to the will now before us, we observe that the testator devised and bequeathed to the bank, as trustee for his daughter, the estate which she was to enjoy during her life. He also gave her the power to dispose of the residue of the corpus by her will. Under Clause E, in the event she did not exercise such power of disposition, the trust estate, he said, "shall cease to be impressed with a trust and shall revert to and become my estate." By this language the testator made no disposition of the residuum of the trust estate, and hence a true reversion arose by operation of law; that is, an undisposed remnant of the estate continued in the testator.

As Mr. Minor points out, "Wherever one possessed of lands grants a *smaller estate* than his own, he has a reversion; that is, as soon as his grantee's *estate* is complete and ended, the possession will revert or *return to him*." 1 Minor on Real Property (2d ed., Ribble), § 769, p. 1006. This description of a reversion applies to the clause of the will now under consideration.

We further agree with the lower court that upon the death of the testator intestate as to the reversion it passed and descended immediately to those persons who were his heirs at the time of his death. Code, §§ 64-1, 64-11.

In *Braswell* v. *Braswell*, 195 Va. 971, 81 S. E. 2d 560, we had for interpretation a similar provision in a deed. There James J. Braswell conveyed a tract of land in fee to his son with the following limitation: "during his natural life and to his lawful heirs at his death, and if said Nathaniel T. Braswell should die leaving no lawful heir from his body, then the land herein conveyed shall revert back to the said James J. Braswell or to his lawful heirs." The question presented

was whether the limitation, that the land "shall revert back to the said James J. Braswell or to his lawful heirs" if the life tenant should die without heirs of his body, created a reversion in the grantor or a remainder to his lawful heirs. We said: "By using the word 'then' in conjunction with the word 'revert,' and without other language to the contrary, the grantor clearly intended that if the life tenant should die without issue of his body, 'in that case' the land should 'come back,' and pass as if no conveyance had been made." (195 Va., at page 979, 81 S. E. 2d, at page 564.) Consequently, we held that the grantor retained a reversion in the land which upon his death intestate passed to his three sons, his lawful heirs. The same principle applies here.

But if we adopt the view of the appellant and construe Clause E as creating a remainder to the heirs of the testator who take as purchasers under the will after the termination of the life trust, the ultimate result would be the same, so far as the appellant is concerned, as that reached by the lower court.

Since the will is silent as to the identity of such remaindermen and the time for their determination, under the settled principle favoring the early vesting of estates such remaindermen must be identified as the heirs of the testator at the time of his death and not at the time of the death of the life tenant daughter. *Allison* v. *Allison's Ex'rs.*, 101 Va. 537, 564, 44 S. E. 904, 63 L. R. A. 920; *Snidow* v. *Day*, 145 Va. 721, 726, 134 S. E. 704; *Braswell* v. *Braswell*, *supra* (195 Va., at pages 977, 978, 81 S. E. 2d, at page 564). See also, 20 Mich. Jur., Wills, § 122, p. 321 *ff.*, for a collection of numerous cases on the subject. In other words, under this principle, title to the residue vested in the testator's daughter as the remainderman as of the date of the death of the testator, and upon her death intestate as to the trust estate it descended to her heirs and distributees, the identical persons who the lower court held were entitled thereto.

For these reasons the decree is

*Affirmed.*