### Richmond

IDA L. KING AND ESSIE LAWSON

V.

COMMONWEALTH OF VIRGINIA

August 28, 1980.

Record No. 781347.

Present: All the Justices.

*Russell H. Roberts* (*Roberts, Crosley, Haley & Ashby,* on brief), for appellants.

*Joseph B. Obenshain, Assistant Attorney General* (*Marshall Coleman, Attorney General; Robert P. Kyle, Assistant Attorney General,* on brief), for appellee.

HARRISON, J., delivered the opinion of the Court.

The court below decreed that the estate of Carrie M. Golden, deceased, escheat to the Commonwealth. The decedent, who died intestate on June 5, 1975, was the illegitimate daughter of Martha Golden and John Lawson. It was determined that her only possible heir was William Lawson, her putative father's brother. The appellants here are the heirs of William Lawson who died during the pendency of this proceeding.

The escheator of the City of Fredericksburg filed a bill in chancery, seeking the escheat of Golden's estate. The matter was referred to a commissioner in chancery who reported that the estate should pass to decedent's paternal kindred, there being no maternal kindred. Exceptions were filed, and the trial court, pursuant to its memorandum opinion, overruled the commissioner's findings and held that Virginia Code § 64.1-5 did not allow inheritance by the paternal kindred of an illegitimate. ,

Virginia Code § 64.1-5, in effect at the time of Golden's death, provided that "[i]llegitimate children shall be capable of inheriting and transmitting inheritance on the part of their mothers as if lawfully begotten."[1] Appellants contend that this statute violates the Fourteenth Amendment of the Constitution of the United States by invidiously discriminating on the basis of illegitimacy. They rely on *Trimble* v. *Gordon,* 430 U.S. 762 (1977), a case in which the Supreme Court was faced with the construction of an Illinois statute

---

[1] By act of the General Assembly, 1978, ch. 647, Code § 64.1-5 was repealed and replaced by Code § 64.1-5.1, which allows illegitimates to inherit from their fathers under certain conditions relating to proof of paternity. The conditions are set forth in subparagraph 2 b. as follows:

> The paternity is established by clear and convincing evidence as set forth in § 64.1-5.2; provided, however, that the paternity establishment pursuant to this subparagraph b shall be ineffective to qualify the father or his kindred to inherit from or through the child unless the father has openly treated the child as his and has not refused to support the child.

*See also* subsection 3 of Code § 64.1-5.1 and Code § 64.1-5.2.

similar in wording and in effect to Code § 64.1-5.[2] There, the Court, on equal protection grounds, held void that portion of the Illinois statute which allowed children born out of wedlock to inherit by intestate succession only from their mothers, whereas children born in wedlock could inherit by intestate succession from both their mothers and their fathers.

While the Illinois statute and Virginia's Code § 64.1-5 are similar, the factual backgrounds giving rise to *Trimble* and the instant case are totally dissimilar. The appellant in *Trimble* was a child born out of wedlock whose father never married her mother. He had, however, been found to be her father in a judicial decree ordering him to contribute to her support. When the father died intestate the child was excluded as a distributee because during his lifetime, although having been acknowledged by the father, the child had not been legitimated by the intermarriage of her parents, thereby failing to comply with the statutory requirements for inheritance.[3] Therefore, the question in *Trimble* was whether an illegitimate child could take by intestacy from a man who had been determined in a judicial proceeding during his lifetime to be her father.

We are not concerned in the instant case with inheritance by an illegitimate child. The question before us is whether the relatives of a putative father who never legitimated his child pursuant to statute, and who was never determined to be the father in any judicial proceeding during the lifetime of either, may nevertheless take by intestacy from the illegitimate child. This is a very real distinction. In *Trimble* the overriding concern of the Court was the condemnation and statutory disability visited on the innocent illegitimate children of those who engage in a meretricious relationship. The Court did not feel that penalizing an illegitimate child was an effectual or just way of deterring such a relationship or the most efficient and least constitutionally offensive method of promoting the orderly disposition of property at death. Here the disability being inflicted is not on the innocent illegitimate at all, but upon the putative father of the illegitimate and those claiming through him. It occurs only in

---

[2] Ill. Rev. Stat. ch. 3, §12 (1973) provided, in part:

An illegitimate child is heir of its mother and of any maternal ancestor, and of any person from whom its mother might have inherited, if living; and the lawful issue of an illegitimate person shall represent such person and take, by descent, any estate which the parent would have taken, if living. . . .

[3] Ill. Rev. Stat. ch. 3, §12 (1973) provided, in part:

An illegitimate child whose parents intermarry and who is acknowledged by the father as the father's child, shall be considered legitimate.

cases where the putative father fails to legitimate his child in the mode and manner prescribed by law.

The facts in this case are important because the statute involved may be invalid as applied to one state of facts and yet valid as applied to another. *Griffin* v. *Norfolk County,* 170 Va. 370, 196 S.E. 698 (1938); *Carpel* v. *City of Richmond,* 162 Va. 833, 175 S.E. 316 (1934). The constitutionality of a statute is not considered in a vacuum or resolved by reference to hypothetical facts. The challenged statute must be measured by its application to the facts in the case before the court. The Commonwealth contends that disparate treatment between maternal and paternal kindred of illegitimates is not constitutionally impermissible.

We are concerned here with a classification. In *Trimble* the classification of potential heirs was legitimate children and illegitimate children, and the Supreme Court declined to sanction different treatment for these two groups. However, in the course of its opinion, the Court did state: "The more serious problems of proving paternity might justify a more demanding standard for illegitimate children claiming under their fathers' estates than that required either for illegitimate children claiming under their mother's estates or for legitimate children generally." *Trimble, supra,* 430 U.S. at 770.

In the instant case the classification of potential heirs involves maternal relatives of illegitimate children and paternal relatives of illegitimate children. We note that present Code §§ 64.1-5.1 and 64.1-5.2, enacted by the General Assembly in 1978 to replace the statute under attack, continue to treat maternal kindred of illegitimates differently from paternal kindred. We do not regard this classification as suspect, and the Commonwealth need only show a a rational basis for the disparate treatment.

> The orderly disposition of property at death requires an appropriate legal framework, the structuring of which is a matter particularly within the competence of the individual States. In exercising this responsibility, a State necessarily must enact laws governing both the procedure and substance of intestate succession. Absent infringement of a constitutional right, the federal courts have no role here, and, even when constitutional violations are alleged, those courts should accord substantial deference to a State's statutory scheme of inheritance.
>
> The judicial task here is the difficult one of vindicating constitutional rights without interfering unduly with the State's primary responsibility in this area. Our previous decisions demon-

strate a sensitivity to "the lurking problems with respect to proof of paternity," *Gomez* v. *Perez,* 409 U.S. 535, 538 (1973), and the need for the States to draw "arbitrary lines . . . to facilitate potentially difficult problems of proof," *Weber,* 406 U.S., at 174. "Those problems are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination." . . .
*Trimble, supra,* 430 U.S. at 771.

We observe that the maternal relationship to an illegitimate child is seldom contested. Proof of paternity is often a "lurking problem" present where putative paternal relatives are claiming. The instant case does not involve the putative father, or his brother through whom appellants claim, but the children of that deceased brother. It is they who assert the claim that their uncle was the father of the illegitimate and that they are her heirs. State intestacy laws apply only when a deceased leaves no will. These laws represent an effort by the legislature to express the presumed intentions of an intestate deceased. It is reasonable to assume that an illegitimate child would probably bear no affection for a putative father who had never bothered to legitimate him or her. If the child desired to rebut this assumption a will could be executed. Further, it is the mother of an illegitimate child who customarily assumes a disproportionate share of the responsibilities and obligations of raising the child. Unless a father voluntarily supports his offspring, or is compelled by court action to do so, the mother must bear the entire burden, or call upon her own family for aid and assistance. This is but another reason why the General Assembly accords the materal line of an illegitimate child different treatment from that accorded the putative paternal side in matters of intestate succession.

Pertinent to our decision are cases involving the constitutionality of a New York statute which requires illegitimate children who would inherit from their fathers by intestate succession to show an order of filiation made by a court of competent jurisdiction during the lifetime of their fathers. The statute was challenged in *Lalli* v. *Lalli,* 439 U.S. 259 (1978), in a proceeding brought by an illegitimate son to compel an accounting of his deceased father's estate. In an opinion by Mr. Justice Powell, author of *Trimble,* the Court held the statute to be valid upon the ground that it was substantially related to important state interests, which the statute was intended to promote, and that there was no violation of the equal protection clause. It noted that the statute was designed to "soften the rigors" of previous

New York laws which permitted illegitimate children to inherit only from their mothers, to provide for a just and orderly disposition of property at death, and to protect innocent adults and those rightfully interested in their estates from fraudulent claims and harassing litigation instituted by those seeking to establish themselves as the illegitimate's heirs. The Court recognized that "a number of problems arise that counsel against treating illegitimate children identically to all other heirs of an intestate father" and held unobjectionable the provision of the New York statute which required that the paternity of the father be declared in a judicial proceeding before his death, as a prerequisite of inheritance by the illegitimate child from the father. 439 U.S. at 269.

*Matter of Fay,* 44 N.Y.2d 137, 375 N.E.2d 735, 404 N.Y.S.2d 554 (1978), *appeal dismissed for want of a substantial federal question, sub nom. Buck* v. *Hunter,* 439 U.S. 1059 (1979), also involved the New York statute considered in *Lalli.* An individual claimed to be a half-sister of a decedent by reason of a common father. It was determined that the decedent was not a legitimate child, and one of the issues on appeal was whether the statute which precluded inheritance by the paternal kindred of an illegitimate is violative of equal protection. The Court of Appeals of New York observed that in *Lalli* it had considered the constitutionality of the statute in light of *Trimble,* and it noted the Supreme Court's recognition in *Trimble* that "[t]he orderly disposition of property at death requires an appropriate legal framework, the structuring of which is a matter particularly within the competence of the individual States." *Id.* at 143, 375 N.E.2d at 738, 404 N.Y.S.2d at 557. In sustaining the limitation upon a paternal kindred's right to inherit from the illegitimate the court said:

> We are not concerned with a natural child claiming to be a distributee from his father, nor a situation where a putative father makes a claim as against his illegitimate child, but rather a situation where another individual who claims to be a half-sister of a decedent through a common father seeks a share in the illegitimate's estate.
>
> Appellant challenges, however, the facial constitutionality of the preclusion of inheritance by paternal kindred of an illegitimate, other than the father, irrespective of the existence of an order of filiation. Applying a less than strict scrutiny, but yet not a "toothless" standard of review, we hold that the preclusion of inheritance by the paternal kindred of an illegitimate, at least

where there has been no order of filiation, is not violative of equal protection.
*Id.* at 144, 375 N.E.2d at 738, 404 N.Y.S.2d at 558.

Virginia Code § 64.1-5 was designed to remove all of the illegitimate child's common law disabilities to inherit not only from his mother, but through or on the part of his mother's line of descent, as if legitimate. *Snidow* v. *Day,* 145 Va. 721, 134 S.E. 704 (1926). The General Assembly also. provided that: "If a man, having had a child or children by a woman, shall afterwards intermarry with her, such child or children, or their descendants, if recognized by him as his own child or children before or after marriage, shall be deemed legitimate." Code § 64.1-6. Further, the legislature provided that: "The issue of marriages deemed null in law, or dissolved by a court, shall nevertheless be legitimate." Code § 64.1-7.

We acknowledge the full import and validity of *Trimble.* However, the decree of the court below, escheating the estate of Carrie M. Golden, deceased, was not directed at this illegitimate decedent, or designed as a punishment for the conduct of her parents, Martha Golden and John Lawson. The decree comports with statutes of this state enacted to assure that only the true members of an illegitimate's family be allowed to share in his or her estate, and designed to promote the orderly settlement of estates and the dependability of title to property passing under the laws of intestate succession.

We find no federal or state constitutional infirmity or statutory impediment in precluding inheritance by the paternal kindred of an illegitimate. Accordingly, the decree of the lower court is

*Affirmed.*