(Nos. 80604, 80677 cons.—

*In re* ESTATE OF RONADRA J. HICKS, Deceased (Mark Twain Illinois Bank, Adm'r and Guardian of the Estates of LaDonna and LaDiea Bender, Minors, Appellant, v. Ronald J. Hicks, Appellee).

*Opinion filed December 19, 1996.*

434

Michael B. Marker, of Carr, Korein, Tillery, Kunin, Montroy & Glass, and Lawrence Alan Waldman, all of East St. Louis, for appellant.

Douglas E. Dusek, of Dusek & Lopinot, of Belleville, for appellee.

CHIEF JUSTICE BILANDIC delivered the opinion of the court:

At issue in this appeal is the constitutionality of section 2—2(d) of the Probate Act (755 ILCS 5/2—2(d) (West 1994)), which provides that the estate of an illegitimate intestate who dies without a surviving spouse or descendants shall be distributed to his or her mother and the mother's children/descendants. The circuit court of St. Clair County entered a judgment finding section 2—2(d) unconstitutional because it permitted only mothers, and not fathers, to inherit by intestate succession from their illegitimate children, and thereby unlawfully discriminated on the basis of gender, in violation of the equal rights provision of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 18). The circuit court also determined that section 2—1 of the Probate Act (755 ILCS 5/2—1 (West 1994)) would control the distribution of the estates of illegitimate decedents. That section, which governs the intestate succession of legitimate decedents, allows both mothers and fathers (and their descendants) to inherit by intestate succession from their legitimate children who die without a surviving spouse or descendants.

FACTS

The decedent, Ronadra J. Hicks, was born on April 10, 1985, and died on January 3, 1994. Shortly after Ronadra's death, her mother, Sandra Williams Bender, filed a petition for letters of administration and determination of heirship in the probate division of the circuit court of St. Clair County. That court entered an order appointing Mark Twain Bank (Bank) as the administrator of Ronadra's estate. The circuit court also entered an order determining heirship pursuant to sec-

tion 2—2(d) of the Probate Act, identifying as Ronadra's only heirs her mother, Sandra Bender, and her three half-sisters, LaDonna, LaDiea and LaShawn Bender.

The Bank filed an inventory reporting the sole asset of Ronadra's estate to be an account with a balance of $94,148.27. The circuit court subsequently entered a modified order of heirship, distributing 50% of Ronadra's estate to her mother and the remaining 50% in equal shares to her three half-sisters.

Subsequently, Ronald Hicks, Ronadra's biological father, filed a motion to set aside the modified heirship order and the order appointing the Bank as administrator of Ronadra's estate. Hicks' motion alleged that he was named by Ronadra's mother in a petition to establish parentage filed in the circuit court of St. Clair County, and that he appeared before that court on March 3, 1988, and admitted paternity (approximately three years after the child's birth). The circuit court entered an order establishing paternity and ordered Hicks to pay child support. Hicks' motion claimed that he paid support for Ronadra up to the date of her death pursuant to "an order of withholding previously entered." Hicks' motion sought to set aside the heirship order and argued, *inter alia,* that "the distinction between legitimacy and illegitimacy, as it pertains to Ronald Hicks as father of the deceased, [is] unconstitutional." The motion argued that Hicks should be included among the decedent's heirs at law. The circuit court granted Hick's motion, finding section 2—2(d) of the Probate Act (755 ILCS 5/2—2(d) (West 1994)) violative of article I, section 18, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 18). The circuit court declared Hicks an heir of the decedent but denied further relief.

The trial court subsequently modified its order to find that, having declared section 2—2(d) unconstitu-

tional, section 2—1 of the Probate Act (755 ILCS 5/2—1 (West 1994)) would control the distribution of the estates of illegitimate decedents. Section 2—1 provides that the estate of a legitimate intestate who dies without a surviving spouse or decedent shall be distributed to the decedent's parents and the parents' other descendants, in equal shares. Pursuant to this provision, the circuit court entered an order finding that Ronadra's heirs at law included, not only her mother and her mother's three surviving children, but also her biological father and his two children, Rochelle Jeanette Hicks and Ronyall J'nae Hicks. The trial court ordered that Ronadra's estate be distributed in equal shares to each of Ronadra's seven heirs.

The trial court subsequently granted the Bank authority to appeal its order, and held that the costs incurred in such an appeal would be paid by the decedent's estate. The Bank's appeal was brought directly to this court pursuant to Supreme Court Rule 302 (134 Ill. 2d R. 302). Hicks filed a cross-appeal, claiming that the trial court erred in permitting the Bank to appeal the court's determination of heirship at the expense of the estate.

## ANALYSIS

### I. Constitutionality

We first address the trial court's order declaring section 2—2(d) of the Probate Act unconstitutional. The trial court found section 2—2(d) unconstitutional on the ground that it created a sex-based classification that could not withstand strict scrutiny. Before reviewing the propriety of that finding, we briefly discuss the standard under which the statute is reviewed.

Prior to ratification of the 1970 Illinois Constitution, legislative enactments that classified on the basis of sex, like most legislative classifications, were reviewed under

the more lenient, rational basis standard of judicial review. See, *e.g.*, *Jacobson v. Lenhart*, 30 Ill. 2d 225, 227 (1964); *Henson v. City of Chicago*, 415 Ill. 564 (1953). Article I, section 18, of the 1970 Constitution, however, specifically bars discrimination on the basis of sex. Ill. Const. 1970, art. I, § 18. That constitutional provision states:

> "The equal protection of the laws shall not be denied or abridged on account of sex by the State or its units of local government and school districts."

In *People v. Ellis*, 57 Ill. 2d 127 (1974), our court found that this constitutional provision was intended to supplement and expand the guarantees of the equal protection provision of the bill of rights. The *Ellis* court determined that "a classification based on sex is a 'suspect classification' which, to be held valid, must withstand 'strict judicial scrutiny.' " *Ellis*, 57 Ill. 2d at 132-33; see also *Phelps v. Bing*, 58 Ill. 2d 32, 35 (1974). Under the strict scrutiny standard of review, a statute is not entitled to a presumption of constitutionality. Rather, the statute may be upheld only if the means employed by the legislature to achieve the stated goal were necessary to advance a compelling state interest. *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 73 (1990). In addition, the statute must be narrowly tailored; that is, a statute incorporating a suspect classification will be upheld only if the legislature employed the least restrictive means consistent with attainment of the legislative goal. *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 73 (1990).

### A

With these principles in mind, we now consider the trial court's order that section 2—2(d) illegally discriminated on the basis of gender and resulted in a denial of equal protection of the laws in violation of section 18 of article I of the Constitution of 1970. In addressing the

propriety of this finding, we consider first whether the statute creates a sex-based classification. As stated, that section specifies the manner in which the estate of an intestate decedent who was illegitimate at the time of death shall be distributed. It provides:

> "(d) If there is no surviving spouse or descendant but the mother or a descendant of the mother of the decedent: the entire estate to the mother and her descendants, allowing $1/2$ to the mother and $1/2$ to her descendants per stirpes." 755 ILCS 5/2—2(d) (West 1994).

The father of an illegitimate child who dies intestate is not entitled to any part of his child's estate under the statute.

We agree with the trial court that the statute creates a sex-based classification. The statute distinguishes between the parents of an illegitimate child based solely upon the gender of the parent. Because only females can occupy the status of motherhood, only females are entitled to inherit from their illegitimate offspring under the statutory scheme. By the same token, because only males have the family position of fatherhood, only males are unconditionally excluded under the statute from inheriting from their illegitimate offspring. Thus, the statute creates a sex-based classification and will be upheld only if it withstands strict scrutiny.

## B

We must therefore determine whether the statutory classification is necessary to advance a compelling state interest and whether it is narrowly tailored to achieve that interest. *Fumarolo*, 142 Ill. 2d at 73. In an attempt to justify the sex-based classification created by statute, the Bank argues that the position of the biological father of an illegitimate child is different from that of the biological mother and that the differences in their situations justify the disparate treatment at issue here.

### 1. Presumed Intent

The Bank first argues that the disparate treatment

afforded to the mothers and fathers of illegitimate children is justified by the overriding purpose of section 2—2(d) and all laws governing intestate succession, which is to give effect to the presumed intent of deceased intestates. As the Bank notes, our intestacy laws apply only when a deceased leaves no will, and such laws represent a legislative effort to express the presumed wishes of a deceased intestate. The Bank argues that section 2—2(d) accurately reflects the presumed intent of illegitimate children who die intestate. The Bank contends that section 2—2(d) accords mothers of illegitimate children different inheritance rights than fathers because the legislature recognized that illegitimate children typically have a much closer relationship with their mothers than with their fathers. The Bank notes that mothers not only bear the physical and emotional ramifications of pregnancy, but also customarily assume a disproportionate share of the responsibilities of raising an illegitimate child. See *King v. Commonwealth*, 221 Va. 251, 269 S.E.2d 793 (1980). According to the Bank, fathers of illegitimate children often fail to support their children, unless compelled by court order to do so. In addition, the Bank asserts, fathers frequently have no meaningful personal relationship with their illegitimate children. It is reasonable, the Bank contends, for the legislature to presume that illegitimate children bear no affection for parents who fail to support and acknowledge them. Accordingly, it claims that section 2—2(d) simply carries out the deceased intestate's presumed wishes that his or her estate be distributed only to his or her mother and her descendants.

The state certainly has a legitimate interest in enacting laws that attempt to give effect to the presumed intentions of a deceased intestate. The state may also have a legitimate interest in enacting laws which allow only those parents who have demonstrated an interest

in their illegitimate children to inherit by intestate succession. The United States Supreme Court has recognized that "[i]f one parent has an established custodial relationship with the child and the other parent has either abandoned or never established a relationship, the Equal Protection Clause does not prevent a State from according the two parents different legal rights." *Lehr v. Robertson*, 463 U.S. 248, 267-78, 77 L. Ed. 2d 614, 630-31, 103 S. Ct. 2985, 2996-97 (1983). We assume, for the sake of argument, that the state's interest in enacting legislation which accomplishes these goals is *compelling. Cf. Trimble v. Gordon*, 430 U.S. 762, 775 n.16, 52 L. Ed. 2d 31, 42 n.16, 97 S. Ct. 1459, 1467 n.16 (1977) (suggesting that presumed intent is not a valid state objective for purposes of the equal protection clause, at least where the statute reflecting such intent discriminates against illegitimates).[1]

The question here is whether the discriminatory means employed in section 2—2(d)—which discriminates against fathers of illegitimate children—is narrowly tailored to achieve the state's asserted goals. We conclude that it is not narrowly tailored because the legislature did not employ the least restrictive means for accomplishing its asserted purpose. Here, the state's interest could be effectively achieved in a gender-neutral manner, by allowing intestate succession by any parent who has acknowledged and supported his illegitimate child. (See 8 U.L.A. § 2—114(c) (1991) (Uniform Probate Code) ("Inheritance from or through a child by either natural parent or his [or her] kindred is precluded un-

---

[1]We note that intestate succession laws are acts of states, not individuals. Minor children cannot opt out of intestacy laws that do not accurately effectuate their intent because they lack the legal capacity to execute wills. Section 4—1 of the Probate Act specifies, "Every person who has attained the age of 18 years and is of sound mind and memory has power to bequeath by will ***." 755 ILCS 5/4—1 (West 1994).

less the natural parent has openly treated the child as his [or hers], and has not refused to support the child").

Instead, the challenged statute " 'make[s] overbroad generalizations based on sex which are entirely unrelated to any differences between men and women [and] which demean the ability or social status of the affected class.' " *Michael M. v. Superior Court*, 450 U.S. 464, 469, 67 L. Ed. 2d 437, 442, 101 S. Ct. 1200, 1204 (1981), quoting *Parham v. Hughes*, 441 U.S. 347, 354, 60 L. Ed. 2d 269, 276, 99 S. Ct. 1742, 1747 (1979). Section 2—2(d) is based upon the presumption that a particular parent will be involved or uninvolved in his illegitimate child's life simply because that parent happens to be a man or a woman. Not all mothers assume sole responsibility for their illegitimate offspring, and not all fathers abandon such offspring. In fact, by employing a gender-based classification, section 2—2(d) may actually thwart the legislature's desire to effectuate an illegitimate child's presumed intent in some cases. By employing a gender-based criterion, section 2—2(d) allows a mother who abandons her illegitimate child at birth to inherit from that child, while denying surviving fathers the opportunity to inherit even where there is conclusive evidence that they were objects of their child's affection. As stated, the objectives of the statute could be completely and effectively served by allowing intestate succession by any parent who has acknowledged and supported his illegitimate child.

The Bank argues that administrative concerns support the statute. The Bank, in effect, contends that it is more efficient for the legislature to presume that mothers and not fathers are the natural objects of their illegitimate child's affection than to require a case-by-case determination. The United States Supreme Court has held, however, that gender-based discrimination cannot be justified on the grounds of administrative conve-

nience. In *Reed v. Reed*, 404 U.S. 71, 76, 30 L. Ed. 2d 225, 230, 92 S. Ct. 251, 254 (1971), the Court said that "[t]o give a mandatory preference to members of either sex over members of the other, merely to accomplish the elimination of hearings on the merits, is to make the very kind of arbitrary legislative choice forbidden by the Equal Protection Clause." See also *Frontiero v. Richardson*, 411 U.S. 677, 689, 36 L. Ed. 2d 583, 593, 93 S. Ct. 1764, 1771-72 (1973) (where the Court rejected an attempt to justify, on the grounds of administrative convenience, a gender-based classification that created a presumption that wives were dependent upon their husbands, while requiring proof of dependency in the case of husbands). By the same token, we find that the gender-based classification found in section 2—2(d) cannot be justified on the ground that it effectuates the intent of an illegitimate who dies intestate, because the legislature did not employ the least restrictive (*i.e.*, gender-neutral) means of accomplishing that purpose.

2. Penalizing Fathers of Illegitimates

The Bank next argues that the disparate treatment afforded to mothers and fathers of illegitimates may be justified on the ground that it effectuates the legislature's interest in encouraging family relationships and penalizing irresponsible procreation. The Bank concedes, however, that mothers and fathers bear equal moral accountability for conceiving illegitimate children. The Bank also concedes that mothers and fathers of an illegitimate child are similarly situated in terms of their capacity to legitimate a child. See *Dotson v. Sears, Roebuck & Co.*, 157 Ill. App. 3d 1036 (1987). The Bank nevertheless argues that the statute granting preferential inheritance rights to mothers of illegitimate children is proper because it penalizes men who father children through women whom they have no intention of marrying. The Bank argues that imposing a penalty only upon

fathers of illegitimate children is appropriate, because women have a natural disincentive to avoid unwanted pregnancies.

In Illinois, neither a mother nor a father may unilaterally legitimize a child. An adjudication of paternity during the father's lifetime does not thereby legitimize an illegitimate child. *Dotson v. Sears, Roebuck & Co.*, 157 Ill. App. 3d 1036 (1987). Rather, legitimization is accomplished only when an illegitimate child's parents intermarry *and* the illegitimate child is acknowledged by the father as his child. 755 ILCS 5/2—2(h) (West 1994). Because marriage is possible only with the consent of both parents, the means by which a child may be legitimated are under the control of both parents. Therefore, the discriminatory classification employed in section 2—2(d) may not be justified on the ground that it properly penalizes fathers of illegitimate children.

Section 2—2 is distinguishable in this respect from the statute at issue in *Parham*, 441 U.S. at 355, 60 L. Ed. 2d at 277, 99 S. Ct. at 1747-48. In *Parham*, the Supreme Court upheld a statute that permitted the father of an illegitimate child to sue for the child's wrongful death only if he had legitimated the child during the child's lifetime. In *Parham*, however, a state statute permitted a father to legitimate his child simply by filing a petition in state court identifying the child and its mother and requesting an order of legitimation. The father therefore had the unilateral power to legitimate his child and thereby remove himself from the disability imposed by the wrongful death statute. In Illinois, on the other hand, the father of an illegitimate child is powerless to remove himself from the statutory burden imposed in section 2—2(d), unless the mother of the child consents to legitimate their child through marriage. We therefore reject the Bank's claim that the

discriminatory classification employed in section 2—2(d) may be justified on the ground that it properly penalizes fathers of illegitimate children.

### 3. Proof of Paternity

The Bank's proffered justifications for the gender-based discrimination found in section 2—2(d) are far from the strict showing required to sustain a gender-based classification under article I, section 18, of the Illinois Constitution. We find it appropriate to note at this juncture, however, that we do not suggest that any gender-based classification would violate article I, section 18, of the Illinois Constitution. Such classifications will be upheld when they are narrowly tailored to accomplish a compelling state purpose.

One potential justification for gender-based classifications is the difficulties associated with proof of paternity. In this regard, we note that the state has a legitimate interest in ensuring that a decedent's estate is distributed only to actual members of his family. The United States Supreme Court has recognized that the danger of fraudulent claims against a decedent's estate is more problematic where illegitimate children and their parents are involved than in cases involving legitimate children. See *Trimble,* 430 U.S. at 770, 52 L. Ed. 2d at 39, 97 S. Ct. at 1465; *Lalli v. Lalli,* 439 U.S. 259, 268-69, 58 L. Ed. 2d 503, 511-12, 99 S. Ct. 518, 525 (1978). The Supreme Court has also recognized that the danger of fraudulent claims is more apparent in cases involving fathers and their illegitimate children than in cases involving mothers and illegitimate children, for the simple reason that proof of paternity is more problematic than proof of maternity. See *Trimble,* 430 U.S. at 770, 52 L. Ed. 2d at 39, 97 S. Ct. at 1465; *Lalli,* 439 U.S. at 268-69, 58 L. Ed. 2d at 511-12, 99 S. Ct. at 525.

The Court has noted that the identity of the mother of an illegitimate child is rarely in doubt, since the birth

of a child is a recorded or registered event usually taking place in the presence of others. *Parham,* 441 U.S. at 355, 60 L. Ed. 2d at 277, 99 S. Ct. at 1747-48; *Lalli,* 439 U.S. at 268, 58 L. Ed. 2d at 511, 99 S. Ct. at 525. The identity of the father, on the other hand, is frequently a subject of dispute where an illegitimate child is concerned.

In *Trimble v. Gordon,* the Court recognized " 'the lurking problems with respect to proof of paternity,' [citation], and the need for the States to draw 'arbitrary lines . . . to facilitate the potentially difficult problems of proof,' [citation]." *Trimble,* 430 U.S. at 771, 52 L. Ed. 2d at 40, 97 S. Ct. at 1465. The Supreme Court also noted that, "[t]he more serious problems of proving paternity might justify a more demanding standard for illegitimate children claiming under their fathers' estates than that required either for illegitimate children claiming under their mothers' estates or for legitimate children generally." *Trimble,* 430 U.S. at 770, 52 L. Ed. 2d at 39, 97 S. Ct. at 1465; see, *e.g., Lalli v. Lalli,* 439 U.S. 259, 268-69, 58 L. Ed. 2d 503, 511-12, 99 S. Ct. 518, 525 (1978) (upholding statute that allowed illegitimate children to inherit unconditionally from their mothers, but allowed inheritance from an intestate father only where a court order declaring paternity was entered during the father's lifetime, finding the evidentiary requirement substantially related to the state's interest in avoiding the difficulties associated with proof of paternity and exposure to spurious claims); *Parham v. Hughes,* 441 U.S. 347, 60 L. Ed. 2d 269, 99 S. Ct. 1742 (1979) (right to bring wrongful death action); *Caban v. Mohammed,* 441 U.S. 380, 393 n.15, 60 L. Ed. 2d 297, 308 n.15, 99 S. Ct. 1760, 1768 n.15 (1979) (adoption); 755 ILCS 5/2—2(h) (West 1994).

The "lurking problems" associated with proof of paternity may also arise in circumstances where a

father is attempting to inherit from his illegitimate child's estate. Thus, when enacting statutes which govern the rights of parents to inherit from their illegitimate children, such as section 2—2(d), the legislature has a legitimate interest in adopting measures that minimize or avoid the difficult problems associated with proof of paternity. The more serious problems of proving paternity might justify a more demanding standard for fathers claiming under their illegitimate children's estates than that required for mothers claiming under the estates of their illegitimate children.

The distinction drawn in section 2—2(d) between mothers and fathers of illegitimate children, however, cannot be justified on this ground. Section 2—2(d) cannot withstand strict scrutiny, because the statute is not narrowly tailored to effectuate the state's interests in avoiding either the difficulties associated with proof of paternity after the illegitimate child's death or the danger of fraudulent claims by purported fathers against the estates of illegitimate children. Section 2—2(d) bars *all* fathers from inheriting from the estates of their illegitimate children. The statutory bar applies even in cases, such as this, where the father's paternity has been established in a judicial proceeding during the child's lifetime.

In this respect, section 2—2(d) is comparable to a section of the Illinois Probate Act that the United States Supreme Court struck down in *Trimble* as violative of the equal protection clause of the federal constitution. The statute at issue in *Trimble* allowed illegitimate children to inherit by intestate succession only from their mothers, but not through their fathers. The Supreme Court found the statute unconstitutional under the lenient rational basis standard of review, stating that the "[d]ifficulties of proving paternity in some situations do not justify the total statutory disinheritance of ille-

gitimate children whose fathers die intestate." *Trimble,* 430 U.S. at 772, 52 L. Ed. 2d at 40, 97 S. Ct. at 1466.

The Court found that the statute was not "carefully tuned to alternative considerations" since it excluded inheritance by illegitimates even when the decedent was determined to be the illegitimate child's father in a state court paternity action. The Court concluded that the statute was constitutionally flawed because it excluded significant categories of illegitimate children whose inheritance rights could be recognized without jeopardizing the orderly settlement of estates. *Trimble,* 430 U.S. at 770, 52 L. Ed. 2d at 39, 97 S. Ct. at 1465.

Section 2—2(d) is similarly flawed. The problems associated with proving paternity might justify a statute that imposes a more demanding standard on fathers claiming under their illegitimate children's estates than that required for mothers claiming under their illegitimate children's estates. The difficulties of proving paternity in some situations, however, do not justify the total statutory disinheritance of all fathers of illegitimate children who die intestate. Section 2—2(d) cannot withstand strict scrutiny, because that statute does not adopt the least restrictive means of accomplishing the legislative goal of eliminating the danger of fraudulent claims by putative fathers against their illegitimate children's estates. Accordingly, we affirm the circuit court's determination that section 2—2(d) illegally discriminates on the basis of gender and results in a denial of equal protection of the laws in violation of section 18 of the bill of rights of the Illinois Constitution of 1970.

## II. Remedies

We next consider that part of the trial court's order which held that, because section 2—2(d) was unconstitutional, section 2—1(d) of the Probate Act (755 ILCS 5/2—1(d) (West 1994)) would control the distribution of the estates of illegitimate decedents. Section 2—1(d) governs

the distribution of the estates of *legitimate* decedents who die intestate without a surviving spouse or descendants. That section allows both mothers and fathers (and their descendants) to inherit from their legitimate children who die intestate.

The Bank argues that, given the legislature's express intent to prohibit intestate succession by fathers of illegitimate children, the trial court erred in applying a statute which grants unconditional intestate succession rights to such fathers and their children. The Bank maintains that this court should formulate a common law remedy to fill the statutory gap left by the order declaring section 2—2(d) unconstitutional. Alternatively, the Bank argues that the court should stay the mandate declaring section 2—2(d) invalid and allow the General Assembly to enact a constitutional replacement.

We find, however, that the trial court properly determined that section 2—1(d) of the Probate Act should govern the distribution of the estates of illegitimate decedents who die intestate, at least until the legislature enacts a new statute governing the distribution of such estates. Section 2—1 contains the general rules of descent and distribution for the estates of intestate decedents. On its face, section 2—1 applies to all intestate decedents, without regard to whether they are legitimate or illegitimate. In section 2—2, the legislature carved out an exception to the general rules of section 2—1 for illegitimate decedents. Thus, absent the limitations of section 2—2, section 2—1 would clearly apply to illegitimate decedents. Since we have found section 2—2(d) unconstitutional, the general rules of section 2—1 apply to govern the descent and distribution of the estate of an illegitimate intestate decedent. We, therefore, find that the general rules set forth in section 2—1 should govern the distribution of Ronadra's estate. Obviously, the legislature is free to enact a

constitutional replacement of section 2—2, if it believes that section 2—1 should not apply to illegitimate decedents. For purposes of this case, however, section 2—1 must be applied. The trial court's order distributing Ronadra's estate pursuant to section 2—1(d) is therefore affirmed.

### III. Cross-Appeal

We next address Ronald Hicks' cross-appeal, which challenges that portion of the trial court's order that permitted the Bank, as administrator of Ronadra's estate, to file an appeal and assessed costs against the estate. Hicks argues that the administrator lacks standing to appeal, because he acts solely as a stakeholder and is not aggrieved by the trial court's decision. Hicks also contends that the trial court erred in permitting the administrator to litigate conflicting claims of beneficiaries at the expense of the estate.

Initially, we note that it is the general rule that an administrator of an estate ordinarily has no right to appeal an order granting or denying a distribution of an estate. *In re Estate of Wagner*, 184 Ill. App. 3d 882 (1989); Annotation, *Right of Executor or Administrator to Appeal From Order Granting or Denying Distribution*, 16 A.L.R.3d 1274, 1277 (1967). The rationale for this rule is that the administrator is not an aggrieved party, but is merely a stakeholder with a duty to deliver the residue of the estate to those persons designated by the court. *In re Estate of Wagner*, 184 Ill. App. 3d 882 (1989); see also *In re Estate of Burke*, 203 Ill. App. 3d 319 (1990) (applying the same reasoning to an executor); *In re Estate of Tingos*, 72 Ill. App. 3d 703 (1979) (applying the same reasoning to an executor); 16 A.L.R.3d at 1277 (and the cases cited therein). An order granting or denying a distribution of an estate affects the rights of those who have a claim against the estate (*e.g.*, an heir, legatee, or devisee) and it is those persons who are considered

to be aggrieved parties such that they may appeal at their own expense. 16 A.L.R.3d at 1277. The administrator of an estate, however, generally cannot litigate the conflicting claims of the beneficiaries at the expense of the estate. 16 A.L.R.3d at 1277.

In this case, the order appealed from was the trial court's ruling that a portion of Ronadra's estate was to be distributed to her father, Ronald Hicks, and his two children, Rochelle Hicks and Ronyall Hicks. This ruling resulted in reducing the distributive shares of Ronadra's mother, Sandra Bender, and her three children, LaShawn, LaDonna and LaDiea Bender. Consequently, these individuals were the parties "aggrieved" by the trial court's order and were the proper parties to appeal the trial court's order. The Bank, as administrator of the estate, was not an aggrieved party. As such, the Bank did not have standing to bring this appeal in its capacity as administrator of the estate. *In re Estate of Wagner*, 184 Ill. App. 3d at 885-87. Therefore, we reverse the trial court's order that allowed the Bank to file an appeal in its capacity as administrator of Ronadra's estate.

Although the Bank has no standing to bring this appeal in its capacity as administrator of Ronadra's estate, we nevertheless find that this appeal is properly before this court. The record indicates that the Bank acted in a dual capacity as both administrator of Ronadra's estate and as guardian of the estates of Ronadra's two maternal half-sisters, LaDonna and LaDiea Bender. The trial court entered an order authorizing the Bank to appeal the disposition of Ronadra's estate on behalf of those minor siblings. We find that the trial court's order allowing the Bank to prosecute this appeal on behalf of the decedent's two minor siblings was proper because the aforementioned minors are aggrieved parties. LaDonna and LaDiea Bender are aggrieved parties because

the trial court's order disposing of Ronadra's estate reduced their share of the estate. Therefore, we hold that the Bank has standing to bring this appeal in its capacity as guardian of the estates of LaDonna and La-Diea Bender. However, because the Bank is bringing this appeal on behalf of these two minor siblings and not on behalf of Ronadra's estate, the estates of La-Donna and LaDiea Bender should bear the reasonable costs and expenses, including attorney fees, of the Bank in bringing this appeal. We thus reverse that portion of the trial court's order assessing such costs and fees against the estate.

## CONCLUSION

We affirm the trial court's conclusion that section 2—2(d) of the Probate Act unlawfully discriminates on the basis of gender, in violation of the equal rights provision of the Illinois Constitution. Ill. Const. 1970, art. I, § 18. We also affirm the trial court's holding that section 2—1(d) of the Probate Act (755 ILCS 5/2—1(d) (West 1994)) will control the distribution of the estates of illegitimate decedents who die intestate without a surviving spouse or descendants. We reverse the trial court's order authorizing the Bank to bring this appeal in its capacity as administrator of Ronadra's estate. We further reverse that portion of the trial court's order assessing the costs and fees associated with bringing the instant appeal against the estate. We hold, however, that the Bank has standing to bring this appeal in its capacity as guardian of the estates of Ronadra's minor half-sisters, LaDonna and LaDiea Bender. We further hold that the Bank's costs and fees are properly assessed against the estates of LaDonna and LaDiea Bender, whom the Bank represented in bringing this appeal.

The judgment of the circuit court is affirmed in part and reversed in part.

*Judgment affirmed in part*
*and reversed in part.*